## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FLO & EDDIE, INC., individually and on behalf
of all others similarly situated,

       Plaintiff,

v.

SIRIUS XM RADIO INC., and DOES 1
through 10,

       Defendants.

CIVIL ACTION No.
13-CV-5784 (CM) (HBP)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF SIRIUS XM'S MOTION FOR SUMMARY JUDGMENT

R. Bruce Rich
Benjamin E. Marks
Todd Larson
John R. Gerba
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
*r.bruce.rich@weil.com*
*benjamin.marks@weil.com*
*todd.larson@weil.com*
*john.gerba@weil.com*

and

Michael S. Oberman
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9294
Fax:  (212) 715-8294
*moberman@kramerlevin.com*

*Attorneys for Defendant Sirius XM Radio Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................1

I.    THE UNAUTHORIZED PUBLIC PERFORMANCE OF SOUND
    RECORDINGS DOES NOT VIOLATE NEW YORK LAW ...............................1

    A.    Plaintiff's Effort to Flee from Governing New York Precedents by
        Resort to a Misconceived Conception of Property Rights is Unavailing .....................1

    B.    Plaintiff Cannot Explain Decades of Failed Legislative Efforts To
        Secure a Public Performance Right or Its Own Inaction in Asserting
        Such a Right .....................................................................................................3

    C.    Plaintiff Has Not Established that Unauthorized Public Performances
        of Its Recordings Constitute Copyright Infringement ...................................5

    D.    Plaintiff Fails To Establish that Sirius XM's Performances of Its
        Recordings Meet the Elements of a New York Unfair Competition
        Claim ...............................................................................................................8

II.    17 U.S.C. § 301(C) DOES NOT AUTHORIZE NEW YORK TO VIOLATE
    THE COMMERCE CLAUSE BY REGULATING NATIONWIDE
    BROADCASTS ...............................................................................................10

III.    THE COPIES OF PLAINTIFF'S PRE-1972 RECORDINGS MADE IN AID OF
    SIRIUS XM'S PUBLIC PERFORMANCES ARE NOT ACTIONABLE .........................12

IV.    PLAINTIFF'S CLAIMS ARE BARRED BY LACHES.....................................15

CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**P**AGE(S)

**Cases**

*A&M Records, Inc. v. Heilman*,
   75 Cal. App. 3d 554 (1977) .........................................................................................7

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003)..........................................................................................12

*Arista Records LLC v. Lime Grp. LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011).........................................................................12

*Authors Guild v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014)..........................................................................................14

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).....................................................................................................14

*Capitol Records, Inc. v. Mercury Records Corp.*,
   221 F.2d 657 (2d Cir. 1955).........................................................................................12

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
   4 N.Y.3d 540 (2005) ............................................................................................. *passim*

*Capitol Records, LLC v. BlueBeat, Inc.*,
   765 F. Supp. 2d 1198 (C.D. Cal. 2010) ........................................................................7

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
   No. 12-CV-06646 (AJN)(SN) (S.D.N.Y. May 28, 2014)..............................................6

*Capitol Records, LLC v. Harrison Greenwich, LLC*,
   44 Misc. 3d 202 (N.Y. Sup. Ct. 2014) ..........................................................................7

*Capitol Records, LLC v. Harrison Greenwich, LLC*,
   No. 652249 (N.Y. Sup. Ct. May 13, 2014)..................................................................6, 7

*Capitol Records, LLC v. ReDigi Inc.*,
   934 F. Supp. 2d 640 (S.D.N.Y. 2013)...........................................................................6

*Cont'l Cas. Co. v. Beardsley*,
   151 F. Supp. 28 (S.D.N.Y. 1957), *modified*, 253 F.2d 702 (2d Cir. 1958).............3, 9

*EMI Records Ltd. v. Premise Media Corp.*,
   No. 601209/08, 2008 WL 5027245 (N.Y. Sup. Ct. 2008).............................................3

**TABLE OF AUTHORITIES**
**(continued)**

PAGE(S)

*Estate of Hemingway v. Random House, Inc.*,
   23 N.Y.2d 341 (1968) ............................................................................................9

*Estate of Hemingway v. Random House, Inc.*,
   53 Misc. 2d 462 (N.Y. Sup. Ct. 1967), *aff'd*, 23 N.Y.2d 341 (1968) ...............................12, 13

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
   879 F.2d 1005 (2d Cir. 1989)...................................................................................9

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989)..............................................................................................10

*International News Service v. Associated Press*,
   248 U.S. 215 (1918)..........................................................................................9, 10

*ITC Ltd. v. Punchgini, Inc.*,
   9 N.Y.3d 467 (2007) ..........................................................................................8, 9

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*,
   199 Misc. 786 (N.Y. Sup. Ct. 1950) ........................................................................9

*New England Power Co. v. New Hampshire*,
   455 U.S. 331 (1982)..............................................................................................11

*Pacheco v. Comprehensive Pharmacy Servs.*,
   No. 12 Civ. 1606 (AJN), 2013 WL 6087382 (S.D.N.Y. Nov. 19, 2013) ................................4

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...............................................................................14

*Petrella v. MGM, Inc.*,
   134 S. Ct. 1962 (2014)..........................................................................................15

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
   949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014).......................13

*Sanga Music, Inc. v. EMI Blackwood Music, Inc.*,
   55 F.3d 756 (2d Cir. 1995).................................................................................2, 3

*Sorensen v. Black & Decker Corp.*,
   No. 06CV1572BTM(CAB), 2007 WL 1976652 (S.D. Cal. Apr. 9, 2007).............................15

**TABLE OF AUTHORITIES**
**(continued)**

**PAGE(S)**

*Stockbridge-Munsee Comty. v. New York*,
    No. 13-3069, 2014 WL 2782191 (2d Cir. June 20, 2014) ..................................................15

*Varconi v. Unity Television Corp.*,
    11 Misc. 2d 191 (N.Y. Sup. Ct. 1958) ...........................................................................3, 15

*Victory v. Baker*,
    67 N.Y. 366 (1876) ...........................................................................................................2

*Waring v. WDAS Broad. Station, Inc.*,
    327 Pa. 433 (1937) ...........................................................................................................7

*White v. West Publ'g Corp.*,
    No. 12 CIV 1340 JSR, 2014 WL 3057885 (S.D.N.Y. July 3, 2014) (Rakoff, J.)...................14

*Wyoming v. Oklahoma*,
    502 U.S. 437 (1992) ...................................................................................................10, 11

*Yantha v. Omni Childhood Ctr.*,
    No. 13-CV-1948 ARR JMA, 2013 WL 5327516 (E.D.N.Y. Sept. 20, 2013) .........................9

**Statutes**

17 U.S.C. § 106............................................................................................................6, 12

17 U.S.C. § 301..........................................................................................................10, 11

**Other Authorities**

*Copyright Law Revision: Hearings Before the Subcomm. on Courts, Civil Liberties and the
    Administration of Justice of the H. Comm. on the Judiciary on H.R. 2223* (Comm. Print
    1975) .............................................................................................................................11

Def.'s Mem. of  Law  in Opp. to Pl.'s Mot. for Summ. J., *Capitol Records, LLC v. Escape Media
    Grp., Inc.*, No. 12-CV-06646 (AJN)(SN) (S.D.N.Y. May 21, 2014) ........................................6

Defs.' Mem. of  P. & A. in Opp. to Pls.' Mot. for Partial Summ. J., *Capitol Records, LLC v.
    BlueBeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010) (No. 09-8030)....................................7

Mem. of Law in Opp. to Pl.'s Mot. for Partial Summ. J. & in Supp. of Cross-Mot., *Capitol
    Records, LLC v. Harrison Greenwich, LLC*, No. 652249 (N.Y. Sup. Ct. Jan. 9, 2014)............7

*Music Licensing Study: Second Request for Comments*, 79 Fed Reg. 42,833 (July 23, 2014) .......3

**TABLE OF AUTHORITIES**
**(continued)**

PAGE(S)

*Property* §1.1.2 (4th ed. 2014)..........................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff's opposition brief exposes the glaring weakness in its action: the complete absence of precedent either to support its claims or to warrant this Court recognizing an encompassingly broad new right under New York law.  Solely on the basis of some 15 of its works having been performed by Sirius XM—and Sirius XM thereby having engaged in activity identical to that of generations of radio broadcasters and thousands of other New York businesses from bars to bowling alleys—Plaintiff here presses for a novel construction of New York law that would retroactively render unlawful *all* performances of *all* Pre-1972 Recordings across *all* such entities.  Plaintiff makes not the slightest effort to explain why, if it has long possessed the unlimited property rights it asserts, it has failed for nearly fifty years to act on them, let alone to justify as a matter of New York law or policy so destabilizing an outcome for the entertainment industry.  While Plaintiff tries to obfuscate the reality, the proposed expansion of rights sought here has been the subject of decades of Congressional attention and repeated determinations, after weighing multiple competing policy interests, that performances of Pre-1972 Recordings should remain free of regulation.  Congress is currently considering the precise issue anew.  If the legal status quo is to be altered, it should be through prospective national legislation, not piecemeal, state-by-state judicial lawmaking such as Plaintiff seeks here.

## ARGUMENT

### I.  THE UNAUTHORIZED PUBLIC PERFORMANCE OF SOUND RECORDINGS DOES NOT VIOLATE NEW YORK LAW

#### A.  Plaintiff's Effort to Flee from Governing New York Precedents by Resort to a Misconceived Conception of Property Rights is Unavailing

Unable to locate a right of public performance under any established body of New York common law, Plaintiff constructs the following syllogism:  Ownership rights in sound recordings are absolute; Plaintiff owns its sound recordings; therefore, *any* uses of those recordings not

licensed by Plaintiff (including public performances thereof) are necessarily unlawful.   While disarmingly simple, Plaintiff's argumentation is completely insupportable.

The conception of "property" that underlies Plaintiff's claim to absolute and unqualified rights in its recordings is indefensible.  It is elementary that the entitlements of a property owner to control, dispose of, or profit from the resource in question are *always* subject to rules designed to protect "the legitimate interests of others."  Joseph Singer, *Property* §1.1.2 (4th ed. 2014).  Even Plaintiff's own selectively cited authority, *Victory v. Baker*, 67 N.Y. 366 (1876), recognizes that property ownership "cannot be an absolute right" and must account for the rights of others to use the property.  67 N.Y. at 368.  The law simply does not presume, as Plaintiff contends, that a property owner enjoys unlimited rights save for previously delineated judicial exclusions.  Opp. 11-12.  Rather, the common law requires a nuanced determination of what activities previous courts have found to violate a plaintiff's rights, under what causes of action, and, as applied here, whether Sirius XM's activities satisfy the elements of such claims.

If Plaintiff's sweeping view of the scope of its rights reflected the law, there would be no need for judicial articulation of the elements of common law copyright or of unfair competition as it applies to commercial uses of sound recordings, such as that undertaken in *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540 (2005) ("*Naxos*").  All a plaintiff would need to demonstrate was that it owned a sound recording, and that *any use whatsoever* of that work took place without its consent.  All manner of such uses—from private performances to resale of used records to radio broadcasts—would be infringements by default.  This, of course, is not the law.  Far from conferring upon authors "ownership of all rights" associated with their creations, Opp. 12, New York courts have instead required that plaintiffs establish that uses of their material satisfy the elements of their common law claims.  And they have refused to find common law violations in a wide variety of uses, including: (i) copying of published works, *see Sanga Music,*

*Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 759 (2d Cir. 1995); (ii) copying that is a fair use, *see EMI Records Ltd. v. Premise Media Corp.*, No. 601209/08, 2008 WL 5027245 (N.Y. Sup. Ct. 2008); (iii) use of the "ideas" or "plans" contained in a work (even for commercial purposes), *see Cont'l Cas. Co. v. Beardsley*, 151 F. Supp. 28, 34, 44 (S.D.N.Y. 1957), *modified on other grounds*, 253 F.2d 702 (2d Cir. 1958); and (iv) use barred by laches, *see Varconi v. Unity Television Corp.*, 11 Misc. 2d 191, 196-97 (N.Y. Sup. Ct. 1958).  Plaintiff has failed to establish the basis for its performance right claim under New York common law.  Its attempted end-run by resort to an untenable conception of property rights ownership is unavailing.

**B.**   **Plaintiff Cannot Explain Decades of Failed Legislative Efforts To Secure a Public Performance Right or Its Own Inaction in Asserting Such a Right**

**1.  *Legislative Efforts.***  In an effort to escape the clear import of the multi-decade record of failed legislative efforts by the record industry to secure a public performance right in sound recordings, *see* SXM Br. 9-12, Plaintiff brands that record as "irrelevant" and contends it has "nothing to do with New York law."  Opp. 10 & n.7.  But it is scarcely irrelevant to cite, *inter alia,* the admissions by record industry representatives as to the historic absence of state or federal protection for performances of sound recordings, together with Congress' accretive protections of certain such performances limited to *post-1972* sound recordings, as evidence that the performance right Plaintiff claims in its Pre-1972 Recordings has been widely recognized *not* to exist.[1]  And it has *everything* to do with New York law to observe the incompatibility of Plaintiff's position that New York has long provided sound recording owners with an exclusive

---

[1] The Copyright Office has rejected Plaintiff's effort to enlist it as an advocate for Plaintiff's position.  *See* Opp. 11 n.8.  It recently reiterated that, "as a factual matter," it was not aware of any state having "affirmatively acknowledged a public performance right in pre-1972 recordings" at the time it issued its 2011 report on Pre-1972 Recordings.  *Music Licensing Study: Second Request for Comments*, 79 Fed. Reg. 42,833, 42,834 n.3 (July 23, 2014) (Supplemental Declaration of John R. Gerba, dated August 13, 2014 ("Gerba Supp. Decl.") Ex. 1).

right of public performance with Congress' preemption of state laws as to Post-1972 Recordings in the 1972 to 1995 period, when no performance rights of any kind were afforded the owners of such works.  By Plaintiff's logic, Congress actually *contracted* the rights such sound recordings otherwise would have enjoyed under New York law, a patently absurd position that finds no support whatsoever in the extensive legislative debates that preceded such enactment.

That Congress has not preempted state law with respect to Pre-1972 Recordings, Opp. 9-11, is entirely beside the point.  The issue before this Court is whether New York, acting on that authority, has recognized unauthorized public performances to constitute infringements of the rights of the copyright owner.  It has not.  Plaintiff also is incorrect in contending that such legislative history constitutes inadmissible hearsay.  *See* Opp. 10 n.7.  Because that evidence is offered to show the context in which the parties have been operating, it is plainly admissible. *See, e.g.*, *Pacheco v. Comprehensive Pharmacy Servs.*, No. 12 Civ. 1606 (AJN), 2013 WL 6087382, at *8 (S.D.N.Y. Nov. 19, 2013).

**2.  *Plaintiff's Inaction*.**  There is no limiting principle to Plaintiff's theory of recovery. To the contrary, its implications extend indiscriminately to recordings created even 90 or more years ago, and to all manner of New York performance venues and media dissemination, analog and digital alike.  SXM Br. at 1-2, 6, 9-10, 14-15.  Sirius XM's opening brief established that Plaintiff has made no effort ever to license a single such venue, whether a radio broadcaster, webcaster, nightclub, or restaurant.  *Id.* at 6.  It necessarily follows that a ruling creating a first-ever performance right would radically alter past practice and expectations on the part of thousands of participants in the entertainment industry, as well as expose them to potentially severe infringement claims for conduct as to which none previously had been placed on notice.

Plaintiff fails to acknowledge, much less respond to, these stark facts and implications. This is unsurprising, since Plaintiff's failure to assert claims of the nature brought here for half a

century speaks volumes as to their legally unfounded nature; that non-response also reflects the undeniably enormous policy implications of creating new New York law, a reality Plaintiff would sooner avoid the Court confronting.

**C.    Plaintiff Has Not Established that Unauthorized Public Performances of Its Recordings Constitute Copyright Infringement**

Plaintiff roots its common law copyright infringement claim in *Naxos*.  Opp. 11.  But as Sirius XM demonstrated in its opening brief, SXM Br. 12-16, 25-26, *Naxos* lends no support whatsoever to Plaintiff's claims: its articulation of both New York common law copyright infringement and unfair competition requires the unauthorized *reproduction and distribution* of copies of sound recordings.  *Naxos*, 4 N.Y.3d at 563.  Consistent with this holding, virtually all of the other cases from New York and other jurisdictions on which Plaintiff relies for its purported state-law right of public performance involved record piracy—*i.e.*, competing sales of unauthorized copies of sound recordings or the peer-to-peer file-sharing equivalent—rather than public performances of any kind, let alone via radio broadcasting.  *See* Opp. at 11 n.9, 13-16, 19.

Plaintiff attempts to gloss over this obvious distinction by characterizing Sirius XM's broadcast activities, no differently than the activities of record pirates, as involving the "sale" of "recorded artistic performances."  Opp. 13, 19 (analogizing Sirius XM to download distributor LimeWire).  But facile draftsmanship cannot obscure the facts.  A "recorded artistic performance" is just a roundabout way of referring to a sound recording, not a description of the rights the owner of such a sound recording enjoys.  Distinct from record pirates, Sirius XM does not engage in sales of such sound recordings; it performs them.  While New York protects Plaintiff's "recorded performances" (sound recordings) from illegitimate reproductions and distributions (*i.e.*, sales) of copies of those recordings, it does not restrict public performances of them.  It is expedient for Plaintiff to attempt to blur these distinct forms of commercial

exploitation, but the distinction is one that copyright law has recognized throughout its long history. *See* 17 U.S.C. § 106(2), (4), (6). Plaintiff's own licensing practices reflect such recognition. It has long licensed sales of copies of its Pre-1972 Recordings but has *never* licensed radio broadcasts or webcasts (*i.e.,* public performances) of those very same recordings. SXM 56.1 ¶¶ 63, 66, 68, 69, 73, 74; Opp. 5-6.

Plaintiff's cursory citation to *Capitol Records, LLC v. Escape Media Group, Inc.*, No. 12-CV-06646 (AJN)(SN) (S.D.N.Y. May 28, 2014) ("*Escape Media*"), and *Capitol Records, LLC v. Harrison Greenwich, LLC*, No. 652249 (N.Y. Sup. Ct. May 13, 2014) ("*Harrison*"), Opp. 12-13, does not advance its case. *Escape Media* is a non-binding report and recommendation of a magistrate judge addressing the Grooveshark music service, which allows users to upload songs and to search and listen to particular songs on demand. *Escape Media* at 28-29 (Gerba Supp. Decl. Ex. 2). Escape's briefing did not even mention the scope of the plaintiff's rights in Pre-72 Recordings under New York law, much less challenge them; it argued only that it was shielded from liability (as to both pre- and post-72 works) by the safe harbors of the Digital Millennium Copyright Act and a prior settlement agreement. *See id.* at 41, 52; Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J., No. 12-CV-06646 (AJN)(SN) (S.D.N.Y. May 21, 2014) (Gerba Supp. Decl. Ex. 3). The magistrate judge, in turn, did not conduct any separate analysis of New York law bearing on this issue, and had no occasion to consider the issues animating *this* litigation. In two brief paragraphs (of an 80-page report), she merely accepted Capitol's unopposed argument that if Escape infringed Capitol's performance rights under federal law, then it also infringed Capitol's rights under state law. *Escape Media* at 51-52. The lone case cited for that proposition, *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013), was a federal copyright case involving an Internet distributor of digital downloads; it did not involve performance rights and discussed New York law only in a short footnote. *See id.* at 657 n.8.

6

Plaintiff's reliance on *Harrison* is equally unavailing.  Capitol there challenged the unauthorized use of a sound recording on a restaurant website.  As in *Escape*, the defendant's briefing never addressed whether New York law provides a public performance right in Pre-1972 Recordings.  Mem. of Law in Opp. to Pl.'s Mot. for Partial Summ. J. & in Supp. of Cross-Mot. at 19, No. 652249 (Jan. 9, 2014) (Gerba Supp. Decl. Ex. 4).  The court, also relying principally on *ReDigi*, initially found Harrison liable for an infringing reproduction, and did not address the performance claim.  *Capitol Records, LLC v. Harrison Greenwich, LLC*, 44 Misc. 3d 202, 205 (N.Y. Sup. Ct. 2014).  Evidently sensing an opportunity to establish favorable precedent against an unsophisticated adversary, Capitol asked the court to amend its order to state that Harrison had also committed an unauthorized public performance.  *Harrison*, at 1.  Harrison did not oppose, and without any analysis or citation to precedent, the court granted the motion.  *Id.*

Plaintiff's reliance on cases outside this jurisdiction, *see* Opp. 16-17, is similarly misplaced.  *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010), based its conclusion that a defendant violates California law when it "duplicates, sells, and performs" Pre-1972 Recordings without authorization, *id.* at 1206, on a flat misreading of *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554 (1977).  Bluebeat's briefing failed to point out that *Heilman* was a garden-variety record piracy case not involving public performances at all, and never mentioned the broader issue of public performance rights under California law.  *See* Defs.' Mem. of  P. & A. in Opp. to Pls.' Mot. for Partial Summ. J. at 21-23, No. 09-8030 (Gerba Supp. Decl. Ex. 5).  *Waring v. WDAS Broad. Station, Inc.*, 327 Pa. 433, 435-37 (1937), involved a radio station playing a recording of an orchestra in direct competition with other stations' licensed live broadcasts of that same orchestra, in violation of an express restriction against such performance printed on the records.  The 1937 case was decided on those distinct facts, not on the basis of a general public performance right in sound recordings.  *Id.* at 447-56.

**D.** **Plaintiff Fails To Establish that Sirius XM's Performances of Its Recordings Meet the Elements of a New York Unfair Competition Claim**

A claim for unfair competition under New York law requires Plaintiff to show that Sirius XM reproduces and distributes copies of Plaintiff's recordings, and does so in competition with Plaintiff.  *See* SXM Br. 15-19; *Naxos*, 4 N.Y.3d at 563-64 (unfair competition claim requires "unauthorized copying and distribution"); *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007) ("[M]isappropriation theory … prohibits a defendant from using a plaintiff's property right or commercial advantage … to compete unfairly against the plaintiff in New York.").  The requirement of reproduction and distribution plainly is not satisfied by Sirius XM's public performance of recordings.  Sirius XM's opening brief also established the complete absence of competition between the parties or competitive injury suffered by Plaintiff.  SXM Br. 17-19.  All Plaintiff is able to muster in response is (i) a reprise of its semantic gamesmanship—*i.e.*, the assertion that Plaintiff and Sirius XM both engage in the "sale of performances" of Plaintiff's Pre-1972 Recordings; and (ii) the contention that "[t]he fact that Sirius XM subscribers can get those performances from Sirius XM necessarily means that they do not have to satisfy their demand for the performances from a licensed source."  Opp. 19.  The misleading nature of the first assertion was addressed in Section C above.  There is no evidentiary support for the second.

The record evidence establishes precisely the opposite: Sirius XM's non-interactive radio broadcasts, in which subscribers have no idea when, whether, or how often they might hear one of Plaintiff's Pre-1972 Recordings, are concededly *not* viewed by Plaintiff as substitutes for album sales.  Plaintiff has admitted it cannot point to a single lost sale or license as a result of Sirius XM's broadcast activities; to the contrary, Plaintiff's royalty income and sales have been *increasing*, rather than decreasing, over the period at issue, even while Sirius XM's subscriber levels have grown from 19 to 26 million.  SXM 56.1 ¶¶ 79, 81, 82; Pl's Further Resps. to Def.

Sirius XM Radio Inc.'s First Set of Interrogs. (Attach. A) (Gerba Supp. Decl. Ex. 6).

Plaintiff is left to contend that New York unfair competition law does not require it to show "direct competition," or indeed any competition at all. Opp. 18. This is incorrect. To start, Plaintiff has no more evidence of indirect competition between it and Sirius XM than it has of direct competition: Plaintiff does not license any other radio stations or webcasters, and Sirius XM does not take performance rights licenses from other owners of Pre-1972 Recordings. SXM 56.1 ¶¶ 66, 68, 73, 74. In addition, New York recognizes two theories of common law unfair competition: palming off and misappropriation. *Punchgini*, 9 N.Y.3d at 476. While palming off, which is not alleged here, "has been extended to situations where the parties are not even in competition," *id.*, the misappropriation branch requires a showing of *competitive injury*. *See, e.g.*, *Yantha v. Omni Childhood Ctr.*, No. 13-CV-1948 ARR JMA, 2013 WL 5327516, at *7 (E.D.N.Y. Sept. 20, 2013) (citing numerous cases); *Cont'l Cas. Co.*, 151 F. Supp. at 44 ("unfair competition will not be found" merely because one appropriates the property of another); *Estate of Hemingway v. Random House, Inc.*, 23 N.Y.2d 341, 350 (1968) (affirming dismissal of unfair competition claim due to lack of competition). "Even the New York cases that speak of unfair competition in the broadest terms ground their decisions in a clear competitive injury." *Yantha*, 2013 WL 5327516, at *7 (citing *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786 (N.Y. Sup. Ct. 1950)).[2] *International News Service v. Associated Press*, 248 U.S. 215

---

[2] The history outlined in *Metropolitan Opera*, *see* 199 Misc. at 792-94, also makes clear that the "commercial benefit" mentioned in some formulations of the tort traces to the "benefit" a *plaintiff* enjoys in its reputation or good will, not simply that the defendant acts for its own benefit, Opp. 19, an overbroad expansion that would turn *any* unauthorized use of *any* item into unfair competition, including the performance of recordings by commercial radio stations. *Cf. H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989) (rejecting unfair competition claim that, while "novel and interesting," was not "grounded in any New York case . . . that is at all close on its facts," and concluding "it is not the role of a federal court ruling in diversity to undertake such an expansion of New York law").

(1918), which Plaintiff acknowledges is no longer good law but nonetheless cites as the wellspring for its theory of liability, Opp. 13-14, exemplifies this requirement. The Court there enjoined a wire service from copying and redistributing to its own subscribers the "hot news" first reported by its direct competitor, which threatened the plaintiff's ability to gather the news in the first place. *See* 248 U.S. at 235, 241. No such threat to incentives to creative activity exists here, as each of the recordings at issue is necessarily already at least 42 years old.

## II.   17 U.S.C. § 301(c) DOES NOT AUTHORIZE NEW YORK TO VIOLATE THE COMMERCE CLAUSE BY REGULATING NATIONWIDE BROADCASTS

Even if New York desired to regulate nationwide broadcast activity like that of Sirius XM in the manner Plaintiff proposes, it could not. As Sirius XM showed in its opening brief, and as Plaintiff does not directly contest, Plaintiff's proposed expansion of New York law to encompass a state-law performance right would, in "practical effect," directly regulate conduct "beyond the boundaries of the state." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989). Plaintiff also does not contest that the Commerce Clause prohibits states from directly regulating extraterritorial conduct, either by statute or by common law. Nonetheless, Plaintiff advances two broad reasons why its proposed expansion of New York law would be consistent with the Commerce Clause: (i) Section 301(c) of the Copyright Act—which nowhere mentions state-law performance rights—somehow "specifically authorized" the states to protect those rights; and (ii) the Commerce Clause is not violated if a state law merely requires Sirius XM to "modify its operations." Opp. 31. Neither argument has merit.

First, as even Plaintiff recognizes, Congress must "specifically authorize" state regulatory action to take it beyond the purview of the Commerce Clause. *See* Opp. 30; *Wyoming v. Oklahoma*, 502 U.S. 437, 458 (1992) ("Congress must manifest its *unambiguous intent* before a federal statute will be read to permit or approve such a violation of the Commerce Clause as

Oklahoma here seeks to justify.") (emphasis added).  Plaintiff purports to derive this

unambiguous authorization from Section 301(c) itself, but Section 301(c) is a "standard 'nonpre-

emption' clause," and accordingly is "in no sense an affirmative grant of power to the states to

burden interstate commerce in a manner which would otherwise not be permissible." *See New

England Power Co. v. New Hampshire*, 455 U.S. 331, 341, 343 (1982) (quotation marks

omitted).  Unlike the provisions at issue in the cases on which Plaintiff relies, nothing in Section

301(c) "specifically authorizes" much less reflects Congress's "unambiguous intent" to "alter the

limits of state power otherwise imposed by the Commerce Clause," let alone permit state

regulation of nationwide performances.  *Wyoming*, 502 U.S. at 458 (quotation marks and citation

omitted).  Plaintiff cannot point to legislative history for support either, because it confirms that

Congress (at the record industry's prompting) merely intended Section 301(c) to preserve state

*record piracy laws* for Pre-1972 Recordings.  *See Copyright Law Revision: Hearings Before the

Subcomm. on Courts, Civil Liberties and the Administration of Justice of the H. Comm. on the

Judiciary on H.R. 2223*, at 137-38 (Comm. Print 1975) (DOJ testimony that 301(c) (then 301(b))

was needed to prevent "abrogating the antipiracy laws now existing in 29 states") (Gerba Supp.

Decl. Ex. 7); *id.* at 1396-97 (RIAA testimony supporting adoption of 301(c) for same reason).

     Second, Plaintiff's argument that the Commerce Clause is not violated merely because

"Sirius XM might be required to modify its operations or obtain licenses," Opp. 31, ignores the

undisputed factual record.  Because of technical characteristics inherent in satellite broadcasting

and federal regulations, Sirius XM *cannot* modify its operations to tailor its broadcasts in state-

specific fashion and thereby avoid the extraterritorial reach of a New York performance right.

SXM Br. 36; SXM 56.1 ¶ 8.  That Sirius XM would have to obtain a New York license to

broadcast Pre-1972 Recordings outside of New York is not merely a benign business practice

Sirius XM could change, but the Constitutional defect itself: a state-law performance right would

impermissibly regulate extraterritorial conduct. *See Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries," Vermont impermissibly "project[ed] its legislation into other states.") (citation omitted).

## III.   THE COPIES OF PLAINTIFF'S PRE-1972 RECORDINGS MADE IN AID OF SIRIUS XM'S PUBLIC PERFORMANCES ARE NOT ACTIONABLE

Plaintiff's arguments that reproductions made by Sirius XM in aid of public performance violate New York law are equally lacking in merit.  First, Plaintiff's complaint about Sirius XM's creation of server copies, Opp. 22-23, ignores that the creation of most such copies is covered by prior class action settlements in unrelated litigation and not actionable here.  SXM Br. 24.  Second, Plaintiff's contention that it need not show that the allegedly infringing copies were ever distributed to the public, Opp. 20, ignores the clear holding of *Estate of Hemingway v. Random House, Inc.*, 53 Misc. 2d 462, 464 (N.Y. Sup. Ct. 1967), *aff'd*, 23 N.Y.2d 341; *see also* 17 U.S.C. § 106(3) (limiting federal distribution right to distributions "to the public").  Plaintiff also quibbles with Sirius XM's description of server, buffer and cache copies as "incidental," Opp. 22, but the fact remains that such copies are made only to facilitate lawful public performances and are never distributed to the public.  New York common law has always required more to establish liability.  *See, e.g.*, *Naxos*, 4 N.Y.3d at 548;[3] *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955); *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011) (unfair competition claim requires "unauthorized reproduction and distribution").

---

[3] *Naxos* made clear this requirement is true of the common law copyright claim as well as the unfair competition claim.  *See* SXM Br. 25-26.  Plaintiff mocks Sirius XM's grammar, Opp. 20, but fails to rebut its substantive point: the *Naxos* court's use of the "in addition to" construction in spelling out the elements of New York unfair competition, 4 N.Y.3d at 563, only makes sense if the first half of the test was meant to identify the elements of common law copyright (including distribution), and the second half to explain the "additional" element necessary for an unfair competition claim.  Such phrasing would have been superfluous otherwise.

In an effort to evade the import of this requirement, Plaintiff wrongly contends that Sirius XM unlawfully "distributes copies" of Pre-1972 Recordings by using progressive downloading technology to stream its Internet radio broadcasts. Opp. at 21. Plaintiff's support for this contention, a single Wikipedia page, is disfavored in legal briefing. *See, e.g.*, *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 557 n.5 (S.D.N.Y. 2013) (Wikipedia "is not valid legal authority"), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). And contrary to what the cited Wikipedia page suggests, the music-player software on users' mobile devices merely buffers 20-second fragments of programming to ensure a smooth, uninterrupted stream. *See* Smith Supp. Decl. ¶ 3. These short, buffered fragments are not song-specific: a particular fragment may contain the end of one song and the beginning of another, a portion from the middle of a song, or no song at all. *Id.* Furthermore, the fragments are encrypted (and thus inaccessible to the user), and discarded as new data flows into the buffer. *Id.* There simply is no analogy between these temporary fragments and the sale of permanent copies to users by record pirates.

Plaintiff also points to the recordings Sirius XM provided to Omnifone for purposes of delivering streams to Sirius XM subscribers. Opp. 21. But that library, in addition to being made outside of New York, was distributed to a lone service vendor of Sirius to assist in delivery of its MySXM service, not to the public (as is required to find liability). *See* SXM 56.1 ¶ 35; *Estate of Hemingway*, 53 Misc. 2d at 464. Nor has Sirius XM provided copies of Plaintiff's Pre-1972 Recordings to Quick Play. SXM 56.1 ¶ 32. Quick Play's cache merely facilitates time-shifted streaming within a five-hour window after the original broadcast, in precisely the same non-interactive sequence as the original, not "later distribution" of copies. SXM 56.1 ¶ 39.

Third, citing *Naxos*, Plaintiff incorrectly suggests that fair use is never a defense under New York law to copying an entire recording. Opp. 21-22. But the Court in *Naxos* merely observed, as other state courts have, that there is "no justification" for adopting a different

general rule under state law than under federal law concerning the fair use analysis. *Naxos*, 4 N.Y. 3d at 564. Federal courts have repeatedly recognized that copying an entire work, even for commercial purposes, and even multiple times, may nonetheless constitute fair use where a weighing of all the remaining factors warrants. *See, e.g.*, *Authors Guild v. HathiTrust*, 755 F.3d 87, 98-99 (2d Cir. 2014) (making full copies of copyrighted works on computer servers at four different locations, as well as disaster back-up tapes, not "excessive or unreasonable" where "necessary to facilitate the services [defendant] provides to the public and to mitigate against the risk of disaster or data loss"); *White v. West Publ'g Corp.*, No. 12 CIV 1340 JSR, 2014 WL 3057885, at *3 (S.D.N.Y. July 3, 2014) (Rakoff, J.); SXM Br. 31-32 (citing cases). Those same cases dispatch Plaintiff's suggestion here that Sirius XM's incidental copying solely in aid of its performances is not transformative; because those copies are not accessible by the public, they do not, and cannot, "supersede[] the objects of the original creation." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (quotation marks and citation omitted); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("The copying function performed automatically by a user's computer to assist in accessing the Internet is a transformative use. . . . [A] cache . . . is designed to enhance an individual's computer use, not to supersede the copyright holders' exploitation of their works.").

Last, because it has no evidence whatsoever of market harm, Plaintiff incorrectly contends that market harm may be presumed because the copies are made in connection with a commercial enterprise. Opp. 29. The Supreme Court has rejected the notion that commercial uses are presumptively unfair, *Campbell*, 510 U.S at 583-84, and there is certainly no presumption of market harm in this circuit. *See HathiTrust*, 755 F.3d at 96 ("To defeat a claim of fair use, the copyright holder must point to market harm that results because the secondary use serves as a substitute for the original work."). Even if there were such a presumption, the

presumption would be rebutted by the record evidence conclusively establishing the absence of market harm.  SXM Br. 16-19; SXM 56.1 ¶¶ 79-85.

## IV.    PLAINTIFF'S CLAIMS ARE BARRED BY LACHES

Plaintiff cannot explain, let alone justify, its extraordinary delay in enforcing its purported rights against Sirius XM or its decades of inaction with regard to unlicensed performances more generally.  It ignores entirely cases such as *Varconi*, 11 Misc. 2d at 196-97, holding that laches operates to bar common law copyright claims like those at issue here in their entirety.  And it improperly tries to extend the holding in *Petrella v. MGM, Inc.*, 134 S. Ct. 1962 (2014) in at least two important ways: first, by suggesting that *Petrella*'s holding as to statutory claims brought within a statute of limitations determined by Congress applies to common law claims in which the statute of limitations was not determined by the legislature with reference to the specific rights at issue, *see Stockbridge-Munsee Cmty. v. New York*, No. 13-3069, 2014 WL 2782191, at *3 (2d Cir. June 20, 2014); and second, by ignoring that even under *Petrella*, laches would bar Plaintiff's claims for an injunction and other equitable relief.  Last, Plaintiff errs in focusing on the legal advice Sirius XM received in relation to Pre-1972 Recordings, rather than its own delay and the expenses incurred by Sirius XM during that period. "Laches is about the actions of the [plaintiff], not the state of mind of the accused infringer." *Sorensen v. Black & Decker Corp.*, No. 06CV1572BTM(CAB), 2007 WL 1976652, at *1 (S.D. Cal. Apr. 9, 2007) (laches "focuses on the reasonableness of the plaintiff's delay and the consequences of it.  The defendant does not have to prove he relied upon the plaintiff's inaction.").  Accordingly, there is no factual dispute precluding summary judgment on laches.

## CONCLUSION

For the foregoing reasons, Sirius XM is entitled to summary judgment and the Complaint should be dismissed with prejudice.

Dated: New York, New York          Respectfully submitted,
      August 13, 2014

By:     /s/ R. Bruce Rich          
      R. Bruce Rich
      Benjamin E. Marks
      Todd Larson
      John R. Gerba
      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York  10153
      Tel:  (212) 310-8000
      Fax:  (212) 310-8007
      *r.bruce.rich@weil.com*
      *benjamin.marks@weil.com*
      *todd.larson@weil.com*
      *john.gerba@weil.com*

and

      Michael S. Oberman
      KRAMER LEVIN NAFTALIS & FRANKEL
      LLP
      1177 Avenue of the Americas
      New York, New York 10036
      Tel:  (212) 715-9294
      Fax:  (212) 715-8294
      *moberman@kramerlevin.com*

      *Attorneys for Defendant Sirius XM Radio Inc.*