UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FLO & EDDIE, INC., individually and on behalf of all others similarly situated,

        Plaintiff,

-against-

SIRIUS XM RADIO INC., and DOES 1 through 10,

        Defendant.

CIVIL ACTION No. 13-CV-5784 (CM)

## SIRIUS XM'S SUBMISSION IN RESPONSE TO ORDER TO SHOW CAUSE

Sirius XM Radio Inc. ("Sirius XM") submits this brief in response to the Court's November 14, 2014 Order, which directed Sirius XM to show cause "why summary judgment should not be entered in favor of Flo & Eddie as to liability only." Dkt. 88 at 1. As explained below, numerous fact-intensive defenses and issues remain to be developed and adjudicated before liability can be determined. Although discovery is ongoing, the evidence developed to date shows that these defenses and issues preclude summary judgment for plaintiff on liability.

Sirius XM requests that the Court schedule a status conference to discuss case management issues and a schedule for resolving this case, including the remaining liability and damages issues.

**1.     Ownership Issues.**  Plaintiff bears the burden of establishing that it owns each of the sound recordings at issue in this lawsuit, and as noted below, based on the record to date, plaintiff cannot satisfy that burden. Ownership is a prerequisite to all of plaintiff's claims. *See* 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 5.01 (2014) ("[A]uthorship is a *sine qua*

*non* for any claim of copyright, be it statutory or … common law."); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 830 N.E.2d 250, 266 (N.Y. 2005) (copyright claims protect "the true owner" of the work); *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 797 (N.Y. Sup. Ct. 1950) (plaintiff must have "property rights" to assert unfair competition claim).

Under federal copyright law, ownership is generally a straightforward issue because registration of a copyright creates a presumption of ownership.  17 U.S.C. § 410(c); *see* 2 NIMMER ON COPYRIGHT § 7.16[D] (federal registration creates presumption of "the validity of the copyright and of the facts stated in the certificate").  Under common law, the ownership inquiry is much more individualized and complex.  In the absence of a state registration system, the Court must examine the facts to determine who owns what rights and whether any rights have been transferred or forfeited.  *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F. Supp. 2d 567, 594-603, 612-13 (S.D.N.Y. 2002) (engaging in complex ownership analysis and concluding that 24 of 70 copyrighted works not owned by plaintiff); *Jerry Vogel Music Co. v. Warner Bros., Inc.*, 535 F. Supp. 172, 175 (S.D.N.Y. 1982) (noting that copyright owner's conduct may result in implied transfer).

In this case, Sirius XM has asked plaintiff to produce the agreement or other documentation by which they claim to own the sound recordings at issue in this lawsuit, but they have been unable to do so, because they "don't know" if such a document exists.  Dkt. 49-1 (Volman Tr. at 44:7-15); *see also* Declaration of Marc J. Pensabene ("Pensabene Decl.") Ex. 1 (Kaylan Tr. at 68:24-69:2), Ex. 3 (Cohen Tr. at 66:6-19).

This is not an issue that can be glossed over.  The chain of title is complex and ambiguous.  The Turtles' recordings were initially recorded by White Whale Records.  Dkt. 49-2 (Kaylan Tr. at 36:16-24, 44:5-7); Dkt. 49-3 (Cohen Tr. at 45:12-19, 56:22-57:3).  White Whale

allegedly transferred ownership of those sound recordings to five Turtles band members, Dkt. 49-3 (Cohen Tr. at 61:3-14), and the other three band members purportedly transferred their ownership interests to Mark Volman and Howard Kaylan, Dkt. 49-2 (Kaylan Tr. at 49:21-51:10); Dkt. 49-1 (Volman Tr. at 43:10-18). Plaintiff claims that Volman and Kaylan then transferred all rights in the Turtles' sound recordings to Flo & Eddie, but again, could not produce any evidence of this transfer. Dkt. 49-1 (Volman Tr. at 44:7-13); Pensabene Decl. Ex. 1 (Kaylan Tr. at 68:24-69:2), Ex. 3 (Cohen Tr. at 66:6-19). Nor has plaintiff produced any evidence confirming that there are no competing claims of ownership by third parties, such as original Turtles band members John Barbata, Don Murray, Jim Tucker, Chip Douglas, and Chuck Portz (none of whom have yet been deposed). Judgment for plaintiff cannot be entered until discovery is complete and until these ownership issues have been resolved.

  **2.**   **License Issues.** Plaintiff has not met its burden of establishing that Sirius XM's performances of plaintiff's pre-1972 sound recordings (as well as Sirius XM's incidental reproductions in aid of those performances) were unauthorized. The existence of an implied or express license is a complete defense to plaintiff's claims. *See Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661 (S.D.N.Y. 2014) ("A license is a complete defense to a claim for copyright infringement."); *Naxos*, 830 N.E.2d at 266 (unfair competition requires "unauthorized" taking).

  Although discovery is ongoing, the evidence developed thus far confirms that plaintiff licensed Sirius XM to perform the pre-1972 recordings at issue in the case. Plaintiff has been aware of Sirius XM's existence for at least ten years. Dkt. 49-1 (Volman Tr. at 83:4-22); Dkt. 49-2 (Kaylan Tr. at 74:3-10); Dkt. 49-3 (Cohen Tr. at 96:20-22). Indeed, Volman and Evan Cohen, plaintiff's music attorney, are longtime subscribers to Sirius XM's service. Dkt. 49-1 (Volman Tr. at 83:23-85:4); Dkt. 49-3 (Cohen Tr. at 97:5-9). For more than seven years,

plaintiff has known that Sirius XM has been performing the Turtles' pre-1972 recordings. Dkt. 49-1 (Volman Tr. at 85:5-8); Dkt. 49-2 (Kaylan Tr. at 74:3-19). And yet, before commencing this lawsuit and related actions, plaintiff *never* asked Sirius XM to stop performing those recordings, or to obtain a license or make payments for such performances. Dkt. 49-4 (RFA Response Nos. 5, 7); Dkt. 49-3 (Cohen Tr. at 98:24-99:2). Nor did plaintiff's exclusive licensing agent, The Orchard, make such a request. Dkt. 49-5 (Pascal Tr. at 49:8-53:11).

Further, Kaylan and Volman have hosted shows, given interviews, and made appearances on Sirius XM more than a dozen times since 2007, and for the majority of these appearances, *Sirius XM played Turtles recordings and other pre-1972 recordings with Kaylan and Volman's express knowledge and endorsement*. *See, e.g.*, Pensabene Decl. ¶¶ 5-9; Dkt. 49-2 (Kaylan Tr. at 75:17-76:23). In 2013, Kaylan made a "Guest DJ" appearance on Sirius XM's "60s on 6" channel (which was broadcast four times), during which he played multiple Turtles recordings from the 1960s. Pensabene Decl. ¶ 6; Dkt. 49-2 (Kaylan Tr. at 75:17-76:23). Over the years, Kaylan and Volman have also hosted many shows on terrestrial radio—and made dozens of other appearances—to promote and play their pre-1972 recordings. *See, e.g.*, Pensabene Decl. Ex. 1 (Kaylan Tr. at 13:12-14:8) (testifying that plaintiff hosted a radio show in the 1970s and 1980s and played Turtles recordings and other pre-1972 recordings); *id.* ¶¶ 10-13.

These actions preclude judgment for plaintiff. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009) (finding license to use and perform musical work where plaintiff allowed defendant to use song and "never discussed … that using the song would constitute copyright infringement"); *Keane Dealer Servs. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (holding that knowledge of use, coupled with "silence in the face of [the defendant's] use,"

results in license); *Ladas v. Potpourri Press*, 846 F. Supp. 221, 225 (E.D.N.Y. 1994) ("A nonexclusive license may be granted orally, or may even be implied from conduct.").

3. **Waiver and Estoppel Issues.** Waiver and estoppel are complete bars to copyright infringement and unfair competition claims. *See Naxos*, 262 F. Supp. 2d 204, 211 (S.D.N.Y. 2003) (waiver is defense to copyright infringement claim), *rev'd on other grounds*; *Granz v. Harris*, 198 F.2d 585, 589 (2d Cir. 1952) (waiver is defense to unfair competition claim); *Petrella v. MGM, Inc.*, 134 S. Ct. 1962, 1977 (2014) ("estoppel may bar the copyright owner's claims completely"); *Renofab Process Corp. v. Renotex Corp.*, 158 N.Y.S.2d 70, 78 (Sup. Ct. 1956) (estoppel precludes unfair competition claim).

Plaintiff waived any right to assert its performance and reproduction claims by "voluntar[ily]" and "intentional[ly]" relinquishing them. *See Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (N.Y. 1982). As set forth above, plaintiff knew that Sirius XM was performing its pre-1972 recordings for many years—and itself performed these recordings when its principals guest hosted on Sirius XM—but *never* asked Sirius XM to stop, obtain a license, or make a payment. To this day, plaintiff has never objected to a terrestrial radio station's performance of its pre-1972 recordings. Dkt. 49-4 (Resp. to RFA Nos. 10, 15, 17, 18); Pensabene Decl. Ex. 3 (Cohen Tr. at 164:9-165:11, 167:17-168:12, 170:7-12); *id.* Ex. 2 (Volman Tr. at 61:20-24); Dkt. 49-2 (Kaylan Tr. at 98:18-100:4).

To the contrary, plaintiff has relied on satellite and terrestrial radio's performance of its recordings for publicity and promotion. *See* Dkt. 49-2 (Kaylan Tr. at 70:14-24) (radio play was "vital" and the "only forum" for promotion when Turtles' recordings were released); Pensabene Decl. Ex. 2 (Volman Tr. at 58:14-59:12) (Turtles wanted to get their music on the radio "to have people hear the music in hopes of buying it"). That is why Kaylan and Volman made so many

appearances on Sirius XM and other radio stations over the years: to play their pre-1972 recordings and promote their work.  These actions waived any right to claim those performances were unlawful.

Plaintiff is also estopped from asserting its claims because Sirius XM justifiably relied on plaintiff's decades-long failure to assert those claims to its detriment.  *See Nassau Trust*, 56 N.Y.2d at 184.  To take just one example, if plaintiff had asserted a performance right in its pre-1972 recordings earlier, Sirius XM could have stopped broadcasting pre-1972 recordings altogether (or at least the small number of Turtles recordings it plays) to avoid or reduce any conceivable liability.  *See* Dkt. 50 ¶ 15 (Frear Decl.).

The Court rejected Sirius XM's laches defense based on *Cadlerock, L.L.C. v. Renner*, 898 N.Y.S.2d 127 (App. Div. 2010), and *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491 (S.D.N.Y. 2005), which held that laches does not apply to actions at law.  Dkt. 88 at 13-14.  Those cases made clear, however, that waiver and estoppel *do* apply to actions at law.  *Cadlerock*, 898 N.Y.S.2d at 128 (in action at law, fact issues precluded summary judgment as to whether plaintiff's claims were barred by estoppel); *Onanuga*, 369 F. Supp. 2d at 499-500 (analyzing applicability of waiver and estoppel defenses in action at law); *see also Petrella*, 134 S. Ct. at 1977 ("estoppel [is] a defense long recognized as available in actions at law").  Plaintiff's claims for relief are legal, not equitable.  Thus, the waiver and estoppel defenses apply.

    **4.**  **<u>Statute of Limitations Issues</u>.**  The Court has not yet adjudicated Sirius XM's statute-of-limitations defense.   Plaintiff's claims are subject to a three-year statute-of-limitations.  *See DeCarlo v Archie Comic Pubs., Inc.*, 127 F. Supp. 2d 497, 507 n.56 (S.D.N.Y. 2001) (copyright infringement claim subject to three-year limitations period under N.Y. C.P.L.R. § 214(4)); *Sporn v. MCA Records, Inc.*, 451 N.Y.S.2d 750, 751 (Sup. Ct. 1982) (unfair

competition claim based on misappropriation subject to three-year limitations period).[1] It is undisputed that Sirius XM and its predecessors, Sirius and XM, have been performing Turtles recordings for more than a decade. Dkt. 51 ¶ 12 (Smith Decl.). Plaintiff did not file this lawsuit until August 16, 2013—far more than three years after its claims accrued.

Plaintiff will doubtless invoke the "continuing wrong" doctrine to allege that each time Sirius XM performs one of its pre-1972 recordings, this gives rise to a new cause of action. But that doctrine has no application where, as here, the claim is premised on an issue of *rights* or *entitlement*—*e.g.*, whether Sirius XM had a license to perform plaintiff's pre-1972 recordings or plaintiff had any right to demand payment for those performances. *See, e.g.*, *Walsh v. Andorn*, 33 N.Y.2d 503, 506-07 (1974) (plaintiff's failure to timely establish right to receive pension payments barred future claims for non-payment, which "depend[] upon the enforceability of the primary right"); *Gassiott v. Prudential Ins. Co. Of Am.*, 2009 WL 3188428, at *5 (S.D.N.Y. Oct. 06, 2009) (plaintiff's "failure to timely file a claim establishing" right to receive payments "precludes Plaintiff from enforcing his claim to any … payments, past or future"); *Merchant v. Levy*, 92 F.3d 51, 56-57 (2d Cir. 1996) (copyright co-owner time-barred from asserting "co-ownership rights and any remedies that would flow from" ownership three years after claim accrued); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 467 (S.D.N.Y. 1999) (all claims

---

[1] The Court's November 14, 2014 Order stated in passing that plaintiff's copyright infringement claim was subject to a *six*-year statute of limitations, citing *Capitol Records, LLC v. Harrison Greenwich, LLC*, 986 N.Y.S.2d 837 (Sup. Ct. 2014). Dkt. 88 at 14. But the *Harrison* court wrongly disregarded cases and other authorities confirming that Section 214(4) of the New York Civil Practice Law and Rules, which applies to all claims "for an injury to property," governs infringement claims and imposes a three-year limitations period. *See DeCarlo*, 127 F. Supp. 2d at 507 n.56; 1 NIMMER ON COPYRIGHT § 12.05[A] ("actions for common law copyright infringement … in New York" subject to three-year statute-of-limitations under Section 214(4)). In any event, plaintiff's infringement claim would be untimely even under a six-year limitations period, because that claim accrued more than a decade ago.

that "rest[] on the premise that plaintiff has a valid claim to the copyrights" time-barred after three years, despite alleged continuing harm).

     **5.**     *Pike* **Balancing Test.**  The Court has not yet addressed whether applying a New York performance right in pre-1972 sound recordings to Sirius XM's national broadcasts would violate the Commerce Clause under the balancing test established by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  *Pike* held that even if a statute has only incidental effects on interstate commerce, it still violates the Commerce Clause if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142.  The Court's November 14, 2014 Order recognized that the *Pike* test provides an independent basis for finding a Commerce Clause violation, Dkt. 88 at 34, but did not consider whether that test is satisfied here.[2]  It is.

     Applying a state-specific performance right would impose a staggering burden on broadcasters, including Sirius XM.  As the Court observed, this would have "significant economic consequences" and "could upend the analog and digital broadcasting industries." Dkt. 88 at 39-40.  On the other hand, plaintiff has yet to identify any countervailing benefit to New York.  Plaintiff claims that a performance right would benefit sound recording owners (many of whom, *including plaintiff*, are not even New York citizens).  But a state's "tenuous interest" in protecting certain of its citizens "cannot constitutionally justify" burdening interstate commerce. *See Pike*, 397 U.S. at 145 (Arizona's interest in protecting fruit growers outweighed by burden of requiring company to build local packing plant); *Am. Libraries Ass'n v. Pataki*, 969 F. Supp.

---

[2] The Court's failure to address the *Pike* balancing test in denying Sirius XM's summary judgment motion is one of several grounds for Sirius XM's pending motion for reconsideration. *See* Dkt. 100.  Regardless of how the Court rules on that motion, it cannot grant summary judgment for plaintiff without addressing the *Pike* balancing test.

160, 177-78 (S.D.N.Y. 1997) (state interest in protecting minors outweighed by chilling effect on internet speech).

\* \* \*

These remaining defenses and issues, which are fact-intensive, preclude summary judgment for plaintiff. They also preclude class certification, as issues such as copyright ownership and the existence of a license are highly individualized and cannot be resolved on a classwide basis. *See, e.g.*, *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65-66 (S.D.N.Y. 2013) (denying certification based on individualized issues of "ownership of the copyright [and] its licensing to and the authorization of the party asserting it (including by way of implied licenses and equitable estoppels)" and noting that "copyright claims are poor candidates for class-action treatment"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at \*21 (N.D. Cal. Mar. 18, 2014) (denying certification where individualized and factual nature of defendant's implied consent defense would likely defeat commonality). Moreover, if the Court grants summary judgment for plaintiff, class certification would be barred as a matter of law on due process grounds. *See Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 134-35 (2d Cir. 2000); *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353-54 (7th Cir. 1975).

Dated:   December 5, 2014                    Respectfully submitted,

/s/ *Marc J. Pensabene*
Marc J. Pensabene
   mpensabene@omm.com
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

Daniel M. Petrocelli (*pro hac vice*)
   dpetrocelli@omm.com
Robert M. Schwartz (*pro hac vice*)
   rschwartz@omm.com
Victor H. Jih (*pro hac vice*)
   vjih@omm.com
O'Melveny & Myers LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Tel:  (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendant Sirius XM Radio Inc.*