**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FLO & EDDIE, INC., a California
corporation, individually and on behalf of all
others similarly situated,

        Plaintiff,

    v.

SIRIUS XM RADIO, INC., a Delaware
corporation; and DOES 1 through 10,

        Defendants.

Civil Action No.:13-CIV-5784(CM)(HP)

---

## FLO & EDDIE'S MEMORANDUM OF LAW IN OPPOSITION TO SIRIUS XM'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

Henry Gradstein
Maryann R. Marzano
Harvey W. Geller
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100
hgradstein@gradstein.com
mmarzano@gradstein.com
hgeller@gradstein.com

and

Evan S. Cohen
1180 Beverly Drive, Suite 510
Los Angeles, California 90035
Telephone: 310-556-9800
Facsimile 310-556-9801
esc@maifesto.com

Attorneys for Plaintiff Flo & Eddie, Inc.

## TABLE OF CONTENTS

I.    INTRODUCTION. ..........................................................................................................1

II.   *WHITEMAN* WAS OVERRULED..............................................................................2

III.  REJECTION OF SIRIUS XM'S DORMANT COMMERCE CLAUSE
      ARGUMENT WAS PROPER...........................................................................................9

      A.   New York's Protection of Pre-1972 Recordings Does Not "Regulate"
           Interstate Commerce. ...........................................................................................10

      B.   Sirius XM's Commerce Clause Argument Can Also Be Rejected on the
           Alternate Ground That Congress Has Authorized the States to Protect Pre-
           1972 Recordings. ..................................................................................................15

IV.   THE SUMMARY JUDGMENT ORDER DOES NOT MEET THE STANDARD
      FOR CERTIFICATION...................................................................................................18

      A.   Sirius XM's Motion Fails to Establish a Controlling Question of Law. .................20

      B.   There is No Split In The Law That Presents Any Substantial Grounds For
           Difference of Opinion. ..........................................................................................21

      C.   An Interlocutory Appeal Would Dramatically Slow Down, Not Speed Up,
           This Litigation........................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554 (1977)........................................................ 12

*Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (Fed. Cir. 2013).................................. 12

*American Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003) ........................................... 18

*Analect LLC v. Fifth Third Bancorp*,
    2009 U.S. Dist. LEXIS 73590 *13 (E.D.N.Y. Aug. 19, 2009)............................ 20, 21, 23

*Bowers v. NCAA, Inc.*, 151 F. Supp. 2d 526 (D. N.J. 2001) ........................................................ 17

*Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657 (2d Cir. 1955) .................. 1, 4, 6

*Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540 (2005)................................................ 6

*Capitol Records, Inc. et al. v. Sirius XM Radio, Inc.*,
    Superior Court of the State of California,
    County of Los Angeles, Case No. BC520981 ................................................................ 10

*Capitol Records LLC v. Escape Media Group, Inc.*, Case No. 12-cv-06646 (Dkt. 90) .............. 22

*Capitol Records LLC v. Harrison Greenwich LLC*,
    No. 65224 (N.Y. Sup. Ct. May 13, 2014)......................................................................... 22

*Capitol Records, LLC v. Harrison Greenwich, LLC*, 984 N.Y.S.2d 274 (2014)......................... 22

*Carlenstolpe v. Merck & Co.*, 1986 U.S. Dist. LEXIS 19375 *1-2 (S.D.N.Y. Oct. 7, 1986) ...... 20

*Central Valley Chrysler-Jeep*, 456 F. Supp. 2d 1160 (E.D. Cal. 2006) ..................................... 17

*Cobbledick v. United States*, 309 U.S. 323 (1940) ..................................................................... 19

*DeVittorio v. Hall*, 2008 U.S. Dist. LEXIS 6595 *14-15 (S.D.N.Y. Jan. 25, 2008) ................... 22

*Dickman v. Comm'r*, 465 U.S. 330 (1984) ................................................................................... 9

*Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC*,
    470 B.R. 257 (E.D.N.Y. 2012) ........................................................................................ 21

*Ettore v. Philco Television Broad. Corp.*, 229 F.2d 481 (3d Cir. 1956)........................................ 5

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
    2014 U.S. App. LEXIS 15395, at *12-14 (9th Cir. 2014) ............................................... 12

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) ..................................................... 14

*Farkarlun v. Hanning*, 855 F. Supp. 2d 906 (D. Minn. 2012)....................................................... 8

*Ferguson v. FriendFinders, Inc.*, 94 Cal. App. 4th 1255 (2002).......................................... 12, 14

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* United States District Court, Central District of
   California, Case No. 13-cv-05693 PSG (Dkt. 117) ........................................................ 10

*Flood v. Kuhn*, 407 U.S. 258 (1972) ........................................................................................ 15

*Funk v. United States*, 290 U.S. 371 (1933) .............................................................................. 5

*General Motors Corp.* v. *Tracy*, 519 U.S. 278 (1997) ................................................................ 9

*Goldstein v. Cal.*, 412 U.S. 546 (1973) ............................................................................... 11, 16

*Healy v. Beer Inst.*, 491 U.S. 324 (1989) ................................................................................ 15

*In re Conseco Life Ins. Cost of Ins. Litig.,*
   2005 U.S. Dist. LEXIS 45538 *9 (C.D. Cal. 2005) .................................................... 24

*In re Facebook, Inc.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014) ............................................ 19, 20

*In re Flor v. Bot Fin. Corp.*, 79 F.3d 281 (2nd Cir. 1996) ...................................................... 22

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
   174 F. Supp. 2d 4 (S.D.N.Y. 2001) ............................................................................... 20

*In re Subpoenas to Local 478, Int'l Union of Operating Eng'rs & Ben. Funds,*
   708 F.2d 65 (2d Cir. 1983) ............................................................................................. 19

*International News Service v. Associated Press*, 248 U.S. 215 (1918) .................................. 5, 9

*Isra Fruit, Ltd. v. Agrexco Agric. Exp. Co.*, 804 F.2d 24 (2d Cir. 1986) ............................... 23

*Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996) ............................................ 19

*L.P. Acquisition Co. v. Tyson*, 772 F.2d 201 (6th Cir. 1985) ................................................. 17

*McCann v. Communs. Design Corp.*, 775 F. Supp. 1506 (D. Conn. 1991) .............................. 20

*McCue v. City of N.Y.*, 521 F.3d 169 (2d Cir. 2008) ............................................................... 19

*McCulloch Intl. Airlines v. Anne Storch Intl.,*
   1975 U.S. Dist. LEXIS 15987 *6 (S.D.N.Y. Sept. 26, 1975) ....................................... 20

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.,*
   199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950) ................................................... 4, 5, 7

*N.Y. Racing Ass'n v. Perlmutter Publ.*, 959 F. Supp. 578 (N.D.N.Y. 1997) .......................... 21

*N.Y. Racing Ass'n v. Perlmutter Publ.*, 95-cv-00994 (FJS) (Dkt. 37) .................................... 21

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.,*
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) ............................................................................. 19

*Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006) .................... 14

*Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159 (1985) ......................... 16

*New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982) ............................................ 18

*Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378 (1983)........................................... 15

*People ex rel State Bar Resources Bd. v. Wilmhurst*, 68 Cal. App. 4th 1332 (1999).................. 17

*People v. Morton*, 284 A.D. 413, 132 N.Y.S.2d 302 (App. Div. 1954) ....................................... 5

*Pike v. Bruce Church*, 397 U.S. 137 (1970) ............................................................................... 18

*Pinter v. City of N.Y.*, 09-civ-7841 (SAS) (Dkt. 115)................................................................ 24

*Pinter v. City of N.Y.*, 976 F. Supp. 2d 539 (S.D.N.Y. 2013) ................................................... 24

*RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2nd Cir. 1940).................................................... passim

*Republic of Colom. v. Diageo N. Am., Inc.*, 04-cv-4372 (NGG) (Dkt. 137) ............................. 23

*Republic of Colom. v. Diageo N. Am., Inc.*, 619 F. Supp. 2d 7(E.D.N.Y. 2007).................. 23, 24

*Sea Air Shuttle v. Virgin Islands Port Authority*, 800 F. Supp. 293 (D.V.I. 1992)..................... 16

*SEC v. Straub*, 2013 U.S. Dist. LEXIS 116483 *23 (S.D.N.Y. Aug. 5, 2013) ........................... 21

*Shamrock Farms v. Veneman*, 146 F.3d 1177 (9th Cir. 1998) .................................................... 18

*Sherlock v. Alling*, 93 U.S. (3 Otto) 99 (1876) .......................................................................... 10

*Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009)........................................... 16

*Tetra Technologies, Inc. v. Harter*, 823 F. Supp. 1116 (S.D.N.Y. 1993)................................... 13

*Transp. Workers Union, Local 100 v. N.Y. City Transit Auth*,
    02-cv-07659 (SAS) (Dkt. 54) ............................................................................................. 21
*Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005)............................................................................ 21, 24

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    261 F.3d 245 (2d Cir. 2001).................................................................................................. 13

*United Haulers Assn. Inc.* v. *Oneida-Herkimer Solid Waste Management Authority*,
    550 U.S. 330 (2007)............................................................................................................... 9

*United States v. Acquest Transit, LLC*,
    2014 U.S. Dist. LEXIS 88907 *5 (W.D.N.Y. June 27, 2014)........................................... 22

*United States v. Nixon*, 418 U.S. 683 (1974) ............................................................................. 19

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988) .................................................................... 19

*Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937) ................................................. 3

*White v. Mass. Council of Const. Employers, Inc.*, 460 U.S. 204 (1983)................................... 16

*Zimmerman v. Wolff*, 622 F. Supp. 2d 240 (E.D. Pa. 2008) ........................................................ 17

<u>Statutes</u>

17 U.S.C. § 301(c) ........................................................................................................... 10, 16

28 U.S.C. § 1291 ..................................................................................................................... 18

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 12

Cal. Civ. Code § 3510 ............................................................................................................... 5

National Traffic and Motor Vehicle Safety Act § 30103(e) ................................................... 16

NY CLS Art & Cult. Affr. § 33.09 .......................................................................................... 11

NY CLS Civ. R. § 50 ............................................................................................................... 11

NY CLS Civ. R. § 51 ............................................................................................................... 11

NY CLS Educ. § 7202 ............................................................................................................. 12

<u>Other Authorities</u>

5 W.F. Patry, *Patry On Copyright*, § 18:55 at 18-198 (2010 ed.) ................................................. 18

*Black's Law Dictionary* at 1461 (9th ed.) ...................................................................................... 17

D.G. Baird, *Common Law Intellectual Property and the Legacy of International News
   Service v. Associated Press*, 50 Univ. Chi. L. Rev. 411, 419 (1983) ................................. 8

E. Subotnik & J. Besek, *Constitutional Obstacles? Reconsidering Copyright Protection
   for Pre-1972 Recordings*, 37 Colum. J. Law & Arts, 327, 338 (2014) ............................. 8

In the Matter of Applications for Consent to the Transfer of Control of Licenses,
   2008 FCC LEXIS 7626 at ¶¶ 73, 154, 155 (adopted July 25, 2008) ............................... 13

Library of Congress: Copyright Office, Music Licensing Study: Second Request
   for Comments, 79 Fed. Reg. 141, at 42, 834 n. 3 (July 23, 2014).................................... 7

R. Bard & L. Kurlantzick, *A Public Performance Right In Recordings: How to Alter the
   Copyright System Without Improving It*, 43 Geo. Wash. L. Rev. 152, 154-55 (1974)....... 7

*Sound Recordings and Phonorecords: History and Current Law*,
   1979 Univ. Ill. L. Forum 337, 346-48 (1979).................................................................... 7

## I.   <u>INTRODUCTION</u>.

The showing that Sirius XM Radio, Inc. ("Sirius XM") must make on a motion for reconsideration is not satisfied by simply proclaiming that a 1940 case that was overruled in 1955 is somehow still good law.  Yet, that is the basis upon which Sirius XM seeks reconsideration.  Indeed, after having fully briefed motions for summary judgment in three different jurisdictions and after having already lost two of those motions, Sirius XM changed counsel and now claims that *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2nd Cir. 1940) is somehow the definitive case on performance rights in sound recordings.  There is a good reason that Sirius XM's prior counsel in all three jurisdictions never cited this case – *Whiteman* was expressly overruled in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955).  As the court in *Mercury Records* held almost sixty years ago, because *Whitman* was based on the ***erroneous*** assumption that the sale of a recording constituted a publication of that recording thereby extinguishing all common law property rights, it "is not the law of the State of New York." *Id*.

Even during its limited life, the holding in *Whiteman* did not stand for the proposition that there was no performance right in sound recordings.  It merely addressed whether a restrictive legend on a recording could be enforced after publication of that recording.  The *Whiteman* court did not, as Sirius XM now contends, make any broad pronouncements regarding the supposed non-existence of a performance right.  To the contrary, the *Whiteman* court clearly recognized the existence of such a right; otherwise, it would never have had to reach the publication issue, which was the genesis of its entire decision.  No matter how hard Sirius XM tries, *Whiteman* is of no help to it.

Equally unavailing is Sirius XM's criticism of the Court's ruling rejecting its dormant Commerce Clause argument.  To counter this Court's finding that New York's property laws are

not regulations subject to Commerce Clause scrutiny, Sirius XM cobbles together an argument that is legally infirm and morally repugnant.  According to Sirius XM, the dormant Commerce Clause permits it to steal the artistic performances embodied in pre-1972 recordings and New York is powerless to put a stop to that conduct *in its own state* because Sirius XM has chosen to operate in other states that might have different laws.  Under that analysis, any business that operates nationwide could insist that, to be enforceable against it, the common law property rights of the fifty states have to be identical.  That would take the dormant Commerce Clause, which is nowhere to be found in the text of the Constitution, and accomplish what the Constitution explicitly rejects.

Lastly, based on a very superficial analysis, Sirius XM asks this Court to certify for interlocutory appeal its denial of Sirius XM's motion for summary judgment.  In making that request, Sirius XM peppers its argument with a series of District Court cases, but never once advises this Court that in four of those cases, the Second Circuit denied the petition for leave to appeal.  When the proper cases are cited, there is simply no analysis under which Sirius XM can satisfy the Second Circuit's stringent three-part test for certification.  Sirius XM cannot show a controlling issue of law, substantial grounds for difference of opinion, and that an immediate appeal would materially advance the ultimate termination of this litigation.  All that Sirius XM can show is that it disagrees with this Court's ruling, which is not a basis to justify the extraordinary remedy of interlocutory appeal.

## II.   *WHITEMAN* WAS OVERRULED.

Sirius XM boldy asserts that *Whiteman* "established the longstanding rule that no public performance right exists in sound recordings at common law."  **(Motion p. 5)**  In support of this statement, Sirius XM does not cite any cases agreeing with this proposition or with its characterization of *Whiteman* because there are none.  Instead, Sirius relies on misleading

characterizations of irrelevant and inadmissible articles, a statement by the Copyright Office that

has since been withdrawn because it was incorrect, and a blog post that violates at least three

basic rules of evidence.  What Sirus XM does not do in its motion is discuss the fact that

*Whiteman* was overruled in 1955 by the very same court that had issued the original opinion and,

in any event, never stood for the proposition that there was no performance right in sound

recordings.

In *Whiteman*, the only issue that the Second Circuit addressed was whether after the sale

of a recording, the owner could enforce a restrictive legend contained on the recording's

packaging that stated it was "[n]ot Licensed For Radio Broadcast."  *Whiteman*, 114 F.2d at 87.

In addressing this limited issue, Judge Learned Hand had assumed that, under New York law, the

sale of a record to the public constituted a "general publication" that ended all common-law

copyright protection.  *Id*. at 88-89.  Based on this conclusion, Judge Hand reasoned that if all

"common law property" rights in a musician's performance "ended with the sale of the records"

embodying that performance, then the owner of that sound recording could not enforce the

restrictive legend on the recording.  *Id*.  It was on that basis – and that basis alone – that the

*Whiteman* court declined to enjoin the public performance of the recordings at issue.[1]

However, in 1950, New York expressed a very different view of its own law.  In *Metro.*

*Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct.

1950), the New York Supreme Court held that the sale of a record to the public was ***not*** a general

publication and did not end common-law copyright protection.  The holding in *Metro. Opera*

was the exact opposite of what Judge Hand in *Whiteman* had assumed the law to be in New

York.  As such, when the Second Circuit revisited the issue in *Capitol Records, Inc. v. Mercury*

---

[1] As noted in *Whiteman*, at the time it was decided, the Pennsylvania Supreme Court had reached
the opposite conclusion in *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937) and
found in favor of the artist and enjoined the unlicensed broadcast of the recordings.

*Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955), it conceded that its holding in *Whiteman* was wrong and "***is not the law of the State of New York.***"  (emphasis added)  As the Second Circuit held:

> In [*Whiteman*], this court stated that the common-law property in the performances of musical artists which had been recorded ended with the sale of the records and that thereafter anyone might copy them and use them as he pleased….Our conclusion is that the quoted statement from the [*Whiteman*] case is not the law of the State of New York.  Since its decision the New York courts have had close contact with the question in [*Metro Opera*].  We believe that the inescapable result of that case is that, where the originator, or the assignee of the originator, of records of performances by musical artists puts those records on public sale, his act does not constitute a dedication of the right to copy and sell the records.

*Id*.

Sirius XM tries to distort this quote by claiming that the court in *Mercury Records* was actually only overruling that portion of *Whiteman* that dealt with copying, and nothing else. **(Motion at 8)**  But that is not what the court said.  What the court in *Mercury Records* said was that its statement that "the common-law property in the performances of musical artists which had been recorded ended with the sale of the records and that thereafter anyone might copy them ***and use them as he pleased***" was not the law in New York.  *Id*.  There would have been no point in saying "and use them as he pleased" if the only portion of *Whiteman* being overruled concerned copying, which was not even at issue in *Whiteman*.

Sirius XM's cramped reading of *Mercury Records* is not even supported by Judge Hand. Indeed, in his dissent in that case, he recognizes that if the sale of a record is not a publication

(and *Metro. Opera* said it was not) then the author of that work would be granted a "perpetual monopoly" and that this monopoly would be "***unlimited both in time and in user***." *Id.* at 667 (emphasis added). Unlike Sirius XM, Judge Hand clearly understood that after *Metro. Opera*, an author's common law copyright in a recording was unlimited. And, unlike Sirius XM, Judge Hand also understood that he was bound by New York law and could not "deal with the situation as we should like..." *Id.*[2]

*Whiteman* is no longer good law because the Second Circuit said it is not good law.[3] But the same conclusion can be reached as a matter of basic jurisprudence. Indeed, because the result in *Whiteman* (which, as noted above, was never as broad as Sirius XM now claims it was) flowed directly from Judge Hand's erroneous conclusion that the publication of a recording ended any common law copyright protection, Sirius XM cannot now suggest that the result in that case nevertheless remains viable. One of the most basic maxims of jurisprudence is that "where the reason of a rule ceased, the rule also ceased." *Funk v. United States*, 290 U.S. 371, 385 (1933); *see also People v. Morton*, 284 A.D. 413, 132 N.Y.S.2d 302 (App. Div. 1954) (same); Cal. Civ. Code § 3510 (same).

Unlike *Whiteman*, the holding in *Mercury Records* remains the law in New York and has been repeatedly reaffirmed, including by New York's highest court in *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 554 (2005) (holding that "the Second Circuit [in *Mercury Records*] reconsidered [*Whiteman*] after *Metro. Opera* and subsequently stated that [*Whiteman*]

---

[2] Judge Hand made a second noteworthy error in *Whiteman* when he wrongly concluded that *International News Service v. Associated Press*, 248 U.S. 215, (1918) was confined to its facts and could not be used to support a claim for unfair competition in New York. *Whiteman*, 114 F.2d at 90. The court in *Metro. Opera* held to the contrary. *Metro. Opera,* 199 Misc. at 796.

[3] The Second Circuit's conclusion was also echoed the next year by Third Circuit when it correctly observed that *Whiteman* was "expressly overruled." *Ettore v. Philco Television Broad. Corp.*, 229 F.2d 481, 488 (3d Cir. 1956).

was 'not the law of the State of New York.'").  As this Court noted in its summary judgment ruling: "[i]n the context of sound recordings 'it has been the law [in New York] for over 50 years that…the public sale of a sound recording…does not constitute a publication sufficient to divest the owner of common-law copyright protection.'"  **(Order at 28)**

The fact that *Whiteman* has not been the law in New York for over sixty years disposes of Sirius XM's motion for reconsideration.  It was thus not surprising that Sirius XM's prior counsel did not cite that case.  What is surprising is that Sirius XM's new counsel now bases a motion for reconsideration on *Whiteman* and is willing to claim that "the Court did not have the benefit of considering this critical case before issuing its Order."  **(Motion at 4)**  *Whiteman* is neither a "critical" nor secret case that Sirius XM's new counsel suddenly discovered.  Not only was it addressed in *Naxos*, but it was cited by this Court in its summary judgment order for the very non-controversial proposition that artists can acquire a common law copyright in sound recordings by expending time, effort, money, and great skill in the creation of those recordings. **(Order at 15)**  That copyright, as Judge Hand readily acknowledged in his dissent in *Mercury Records*, provides the author with a perpetual unlimited monopoly under New York law.

In an attempt to resurrect *Whiteman*, Sirius XM misleadingly quotes from various secondary sources.  **(Motion pp. 5-6)**  For example, Sirius XM claims that in 2011 the U.S Copyright Office cited *Whiteman* for the proposition that "state law does not appear to recognize a performance right in sound recordings."  Of course, Judge Phillip Gutierrez and Judge Mary Strobel do not share that view as evidenced by their California rulings on file with the Court. But as importantly, the Copyright Office does not share that view either.  On March 17, 2014, the Copyright Office stated that "[a] person wishing to digitally perform a pre-1972 sound recording cannot rely on Section 112 and Section 114 statutory licenses and ***must instead obtain***

**a license directly from the owner of the sound recording copyright**." (emphasis added) **(Geller Decl. ¶ 25, Ex. 27, Dkt. 80-22)**  And on July 23, 2014, the Copyright Office stated:

> "[O]thers have misread the Office's observation in its [2011] report on pre-1972 sound recordings that "in general, state law does not appear to recognize a performance right in sound recordings" as an official statement that no such protection is (or should be) available under state law.  This…is a misinterpretation.  While, as a factual matter, a state may not have affirmatively acknowledged a public performance right in pre-1972 as of the Office's 2011 report, the language in the report should not be read to suggest that a state could not properly interpret its law to recognize such a right."[4]

Sirius XM's other secondary sources fare no better.  The law review and journal articles that Sirius XM's cites are simply incapable of altering the law.  In any event, three of the four articles cited by Sirius XM actually recognize that *Whiteman* was limited to the enforceability of a restrictive legend, and two of them even acknowledge that *Whiteman* was overruled.  *See* R. Bard & L. Kurlantzick, *A Public Performance Right In Recordings: How to Alter the Copyright System Without Improving It*, 43 Geo. Wash. L. Rev. 152, 154-55 (1974) (*Whiteman* was overruled in *Metropolitan Opera* and hinged on the restrictive legend and on the supposition that "any common law property. . . in the recorded performances ended with the record's sale, thereby making the restrictive legend on the label ineffective"); S. Diamond, *Sound Recordings and Phonorecords: History and Current Law*, 1979 Univ. Ill. L. Forum 337, 346-48 (1979) (*Whiteman* was based on a federal preemption theory that the sale of a recording divests the

---

[4] *See* Library of Congress: Copyright Office, Music Licensing Study: Second Request for Comments, 79 Fed. Reg. 141, at 42, 834 n. 3 (July 23, 2014).

owner of any right to control its use and was overruled in *Metropolitan Opera*); D.G. Baird, *Common Law Intellectual Property and the Legacy of International News Service v. Associated Press*, 50 Univ. Chi. L. Rev. 411, 419 (1983) (*Whiteman* was based on the enforceability of a restrictive legend).  As for the fourth article cited by Sirius XM, without any analysis, the authors of that student journal cite *Whiteman* in a footnote for the proposition that: "[i]n general, states do not appear to recognize a right of public performance in pre-1972 sound recordings."  *See* E. Subotnik & J. Besek, *Constitutional Obstacles? Reconsidering Copyright Protection for Pre-1972 Recordings*, 37 Colum. J. Law & Arts, 327, 338 (2014).  The authors' citation of a single overruled case from 1940 for this "general" fifty-state proposition is as inexplicable as Sirius XM's preoccupation with secondary sources and says more about the journals' editors than the state of the law.

Finally, the blog post written by Eric Goldman and Tyler Ochoa that Sirius XM asks this Court to credit could not be more inadmissible.  Mr. Goldman and Mr. Ochoa are attorneys/professors who purport to discuss Judge Gutierrez' decision granting Flo & Eddie's motion for summary judgment.  Neither Mr. Goldman nor Mr. Ochoa have been qualified as experts on the issue of pre-1972 recordings, nor could they be.  Their blog post is not evidence of anything, nor is it citable as it lacks foundation, contains inadmissible hearsay, and is replete with improper legal opinion.  *Farkarlun v. Hanning*, 855 F. Supp. 2d 906 (D. Minn. 2012).

When it comes to an actual analysis of the law, Sirius XM's attempt to define the scope of property rights inherent in the ownership of the artistic performances embodied in recordings by only two types of infringing activity (reproduction and distribution) completely ignores the principle that property ownership operates to exclude ***any*** use of that property by others.  *See Dickman v. Comm'r*, 465 U.S. 330, 336 (1984) ("Property is composed of constituent elements and of these elements the right to use the physical thing to the exclusion of others is the most

essential and beneficial.  Without this right all other elements would be of little value. . . .")  The right and ability to exclude others from using a pre-1972 recording is what defines infringing activity, not the reverse.

Finally, Sirius XM's attempt to arrogate to itself the task of deciding for the entire music industry which of the various "competing stakeholders" are entitled to be paid and what "serves the interests of all stakeholders" **(Motion at 9)** is an argument that finds no support in the law – and even less support when offered by a mass infringer.  To the extent that Sirius XM wants to have a discussion about the relevant "policy considerations," it should start with the Supreme Court's admonition in *International News* that it cannot reap where it has not sown. *International News*, 248 U.S. at 239-240.

## III.    REJECTION OF SIRIUS XM'S DORMANT COMMERCE CLAUSE ARGUMENT WAS PROPER.

Although the dormant Commerce Clause has a rather checkered history,[5] even its strongest supporters are not brazen enough to suggest that it can be used to cripple a state's ability to protect common law copyrights from piracy occurring within its own state.  Yet, that is precisely the result that Sirius XM continues to argue for.  Indeed, according to Sirius XM, the dormant Commerce Clause prevents New York from stopping the infringement of pre-1972 recordings in its own state because Sirius XM has chosen to operate a nationwide business.  That is not the law, which explains why Sirius XM lost that argument in this Court – and the two other courts that have considered it.  *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* United States

---

[5] *See General Motors Corp.* v. *Tracy*, 519 U.S. 278, 312, 117 S. Ct. 811, 136 L. Ed. 2d 761 (1997) (Scalia, J., concurring) ("[T]he so-called 'negative' Commerce Clause is an unjustified judicial intervention, not to be expanded beyond its existing domain"); *United Haulers Assn. Inc.* v. *Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 349, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007) (Thomas, J., concurring in judgment) ("The negative Commerce Clause has no basis in the Constitution and has proved unworkable in practice").

District Court, Central District of California, Case No. 13-cv-05693 PSG (Dkt. 117) (Commerce

Clause not applicable becasue 17 U.S.C. § 301(c) authorized protection of rights in pre-1972

recordings under state common and statutory law.);   *Capitol Records, Inc. et al. v. Sirius XM*

*Radio, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No.

BC520981 (same).

Whether this Court relies on its original holding that the protection of property rights is

not a regulation and, thus, not subject to the dormant Commerce Clause or decides to revisit its

holding regarding the applicability 17 U.S.C. § 301(c), the result is the same – Sirius XM's

dormant Commerce Clause argument has no merit.[6]

A.    **New York's Protection of Pre-1972 Recordings Does Not "Regulate"**

       **Interstate Commerce.**

Even if § 301(c) did not exist, Sirius XM's dormant Commerce Clause argument would

still fail.  Indeed, as this Court correctly ruled, the grant and protection of exclusive ownership

rights in pre-1972 recordings in New York does not "regulate" commerce outside of New York.

*Sherlock v. Alling*, 93 U.S. (3 Otto) 99 (1876).  Based on *Sherlock* and its progeny, the Court

rightly concluded that a public performance right "is not a state-imposed regulation – even when

applied to public performances by a national broadcaster" **(Order at 39)** and, thus, Sirius XM's

dormant Commerce Clause argument is "nothing more than a red herring."  **(Order at 37)**

Sirius XM has not cited any case that sustained a dormant Commerce Clause challenge

based upon a violation of a state-specific property right.  Sirius XM also did not cite *Goldstein v.*

---

[6] There is an internal inconsistency in Sirius XM's dormant Commerce Clause argument that it
keeps ignoring.  In order to avoid liability in the California and Florida actions for the
reproductions and distributions which it contends did not occur in those states, Sirius XM argues
that the law in California and Florida does not extend beyond their borders.  However, in order to
avoid liability for its performances of pre-1972 recordings, Sirius XM argues in those cases (like
it argues in this case) that the law in each of the states extends beyond their borders.

*Cal.*, 412 U.S. 546 (1973), which already rejected the argument that the dormant Commerce Clause prevents a state from conferring property rights that may be greater or different than those in other states.  In *Goldstein*, the Supreme Court rejected a constitutional challenge to Cal. Pen. Code § 653h (knowing and willful transfer of the sounds in pre-1972 recordings).  In so doing, the court held that there is no conflict in each state enacting its own copyright laws.

> As we have seen, the language of the Constitution neither explicitly precludes the States from granting copyrights nor grants such authority exclusively to the Federal Government.  The subject matter to which the Copyright Clause is addressed may at times be of purely local concern.  ***No conflict will necessarily arise from a lack of uniform state regulation, nor will the interest of one State be significantly prejudiced by the actions of another.***  No reason exists why Congress must take affirmative action either to authorize protection of all categories of writings or to free them from all restraint.  We therefore conclude that, under the Constitution, the States have not relinquished all power to grant to authors the exclusive Right to their respective Writings.

*Goldstein*, 412 U.S. at 560 (emphasis added)

 *Goldstein* clearly recognized that laws may differ from state to state and the fact that they do is not an issue, and *Sherlock* recognized that those laws are not regulations subject to Commerce Clause scrutiny.  If this Court were to accept Sirius XM's radical view of the dormant Commerce Clause, it would effectively destroy New York's ability to confer intangible property rights within its borders.  Such a ruling would not only affect common law copyrights but would also require that NY CLS Civ. R. §§ 50 and 51 (unauthorized publication of name or likeness) and NY CLS Art & Cult. Affr. § 33.09 (infringment of trademark) be declared unconstitutional.

It is precisely because states are permitted to confer these property rights that dormant

Commerce Clause challenges are routinely defeated.  *See A&M Records, Inc. v. Heilman*, 75 Cal.

App. 3d 554, 567-68 (1977) (no violation of Commerce Clause where common law was intended

to restrain only activities in, or aimed at, California); *Experience Hendrix L.L.C. v.

Hendrixlicensing.com Ltd*, 2014 U.S. App. LEXIS 15395, at *12-14 (9th Cir. 2014) (Washington

state law that recognized post-mortem right of publicity not recognized in other states does not

impermissibly burden interstate commerce); *Ferguson v. FriendFinders, Inc.*, 94 Cal. App. 4th

1255, 1264 (2002) (state regulation of internet advertisements does not violate Commerce

Clause); *see also* Order at 39 (compiling cases).

       In an attempt to circumvent *Sherlock* and its progeny, Sirius XM cites to three cases that

are each more inapposite than the other.  For example, Sirius XM cites to *Allergan, Inc. v.

Athena Cosmetics, Inc.*, 738 F.3d 1350, 1359 (Fed. Cir. 2013) for the proposition that a "state's

general common law constitutes a 'regulation'" subject to Commerce Clause scrutiny.  **(Motion

at 12)**  However, the issue in *Allergan* was whether the District Court's ***nationwide*** injunction

based upon a violation of Cal. Bus. & Prof. Code § 17200 (California's statutory unfair

competition law) was proper.  The issue on appeal was not whether California could enjoin

violations that occurred in California; the issue was whether the California statute could be used

to enjoin conduct occurring in other states.  The Federal Circuit concluded that the nationwide

injunction violated the Commerce Clause by regulating commerce that occurred ***wholly outside

of California***.  Here, there is no nationwide injunction and no one has asked for one.  Moreover,

by protecting common law copyrights, New York is not for a moment attempting to regulate

conduct that occurs outside of New York.

       Sirius XM's reliance on *Tetra Technologies, Inc. v. Harter*, 823 F. Supp. 1116 (S.D.N.Y.

1993) is similarly misplaced.  The issue in *Tetra* was whether an engineer's license in New York

was sufficient for purposes of satisfying NY CLS Educ. § 7202 or whether the engineer's employer in Texas also needed to be licensed.  The Court held that if it construed NY CLS Educ. § 7202 as requiring the Texas employer to also be licensed such a construction would violate the Commerce Clause.  There was no issue in *Tetra* as to whether the engineer himself had to comply with New York law.

Finally, Sirius XM misleadingly cites to *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245 (2d Cir. 2001) for the proposition that "any" time a state exercises governmental powers that are unavailable to private parties, that action constitutes a regulation subject to Commerce Clause scrutiny.  Of course, *Sherlock* and its progeny say otherwise, which is why the Second Circuit in *United Haulers Ass'n* did not use the word "any" (that was a gloss added by Sirius XM) and why it stated that the ["c]lassic hallmarks of government regulation include the threatened imposition of fines and/or jail terms to compel behavior," neither of which are present here.  *United Haulers Ass'n* at 255 (2d Cir. 2001).

Unable to establish that the common law protection of pre-1972 recordings is not a regulation, Sirius XM then embarks on a tortured analysis of the "effect" of New York law on it (not on the interstate market).  To that end, Sirius XM argues that – unlike other companies who infringe in New York – it is immune from liability because it agreed with the FCC that it's "broadcasts must be nationally uniform and cannot be tailored to a particular state." **(Motion at 14)**  In order to make this argument, Sirius XM ignores both the language and purpose of its agreement with the FCC.  That agreement was designed to protect local broadcast stations from Sirius XM's predatory conduct resulting from adding local competitive programming and advertising that "would cause terrestrial broadcasters to lose advertising revenue. . .which would ultimately result in the reduction of their production and airing of local programming . . . ." *See* In the Matter of Applications for Consent to the Transfer of Control of Licenses, 2008 FCC

LEXIS 7626 at ¶¶ 73, 154, 155 (adopted July 25, 2008).  Sirius XM's agreement with the FCC

has no bearing on Sirius XM's obligation to delete infringing programming, nor does it shield

conduct that violates the property rights of owners of pre-1972 recordings.  Sirius XM is trying

to turn an agreement that is intended to protect local broadcasters into an agreement that puts

those broadcasters at a competitive disadvantage by exempting Sirius XM from having to license

the pre-1972 recordings that it exploits in New York.

Neither its agreement with the FCC nor the law excuses Sirius XM from complying with

New York law simply because it is a national broadcaster.  Sirius XM's particular structure and

method of operation are not entitled to deference.  *Exxon Corp. v. Governor of Maryland*, 437

U.S. 117, 127-128 (1978) ("We cannot, however, accept appellants' underlying notion that the

Commerce Clause protects the particular structure or methods of operation in a retail

market…[T]he Clause protects the interstate market, not particular interstate firms, from

prohibitive or burdensome regulations."); *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452

F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("Defendant's argument – that if this court applies the

Unruh Act and the Disabled Persons Acts to Target.com, the practical effect will be to force it to

modify its website for all customers nationwide – is not sustainable."); *Ferguson v.

FriendFinders, Inc.*, 94 Cal. App. 4th 1255, 1264 (2002) (rejecting claim that because of the

"very nature of the internet" state law prohibiting unsolicited email advertisements over the

internet violated the Commerce Clause).[7]

---

[7] Sirius XM argues that *Flood v. Kuhn*, 407 U.S. 258 (1972) and *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378 (1983) require states to stand down whenever national organizations are involved.  Both *Flood* and *Partee* dealt with the special issue of whether state antitrust laws can be applied to regulate the interstate activities of professional sports leagues. Sirius XM is not a national sports league and this is not an antitrust case.  Moreover, those cases have nothing to do with whether New York law can be used to prevent Sirius XM from infringing pre-1972 recordings in New York.

The bottom line is that New York has the right to protect common law copyrights in its own state and is not purporting to regulate interstate commerce by doing so.  If protecting property rights within a state violates the dormant Commerce Clause then there can be no property rights in any state unless every state recognized the exact same rights, and that is not the law.  Sirius XM cannot avoid this obvious conclusion by misstating the holding in *Healy v. Beer Inst.*, 491 U.S. 324 (1989), which it cites for the proposition that "a state law that has the 'practical effect' of regulating interstate commerce violates the Commerce Clause *per se*, regardless of its wording or subject matter."  **(Motion at 13)**  What Sirius XM conveniently omits is that the *Healy* court was referring to regulation of conduct "occurring wholly outside that State's borders." *Id*. at 332.   New York is not "regulating" commerce by protecting the property rights in pre-1972 recordings and it most certainly is not doing so outside of its own borders.[8]

**B.**     **Sirius XM's Commerce Clause Argument Can Also Be Rejected on the Alternate Ground That Congress Has Authorized the States to Protect Pre-1972 Recordings.**

As Flo & Eddie argued in its opposition to Sirius XM's motion for summary judgment, there can be no dispute that "[w]hen Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985); s*ee also White v. Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213 (1983) ("[w]here state or local government

---

[8] Sirius XM's reliance on *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) is also of no help to it.  In *Brown-Forman*, the Supreme Court held that a New York law that attempted to control the price of alcohol sold in other states was unenforceable.  The court noted that this a classic case of economic protectionism that required producers or consumers in other states to surrender whatever competitive advantages they may possess over the producers or consumers in New York.

action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce."  Here, as Judge Gutierrez and Judge Strobel held, 17 U.S.C. § 301(c) provides that express authorization: "[a]ny rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067."

Section 301(c) codifies Congressional intent not only to exempt the states from federal preemption but also to affirmatively and expressly provide the states with the unlimited power to impose "rights and remedies under the common law or statutes" in order to protect pre-1972 recordings.  That is consistent with the Supreme Court's holding in *Goldstein* that California can regulate pre-1972 recordings without violating the Copyright Clause or the Commerce Clause.

Courts routinely rely on the authorization granted in statutes like § 301(c) to reject dormant Commerce Clause arguments.  For example, in *Sea Air Shuttle v. Virgin Islands Port Authority*, 800 F. Supp. 293, 304 (D.V.I. 1992), the Court held that Virgin Island's planning and development regulations that governed the lease of seaplane ramps did not violate the dormant Commerce Clause because the Federal Aviation Act provided that it "shall not be construed to limit the authority of any State...to exercise its proprietary powers and rights."  Similarly, in *Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009), in defending against claims of victims of a bus accident, Greyhound claimed that any state action premised on the absence of seatbelts violated the dormant Commerce Clause because federal law did not require the installation of seatbelts in buses.  The Court rejected this argument, noting that § 30103(e) of the National Traffic and Motor Vehicle Safety Act (*i.e.* "[c]ompliance with a motor vehicle standard under this chapter does not exempt a person from liability at common law") indicated "an express delegation of power to the states," and thus "the Commerce Clause does not apply."  *Id*. at 1107; *see also Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008) (Court rejected the argument the Pennsylvania Dog Law violated the dormant Commerce Clause because the

Federal Animal Welfare Act preserved and expressly authorized states to promulgate their own standards with respect to domestic animals); *Central Valley Chrysler-Jeep*, 456 F. Supp. 2d 1160, 1184 (E.D. Cal. 2006) (California clean air regulations not barred by dormant Commerce Clause notwithstanding that they were more stringent than applicable standards under federal law because federal act permitted the administrator of the EPA to waive application of federal law). *Bowers v. NCAA, Inc.*, 151 F. Supp. 2d 526, 538 (D. N.J. 2001) (rejecting dormant Commerce Clause challenge because the Americans with Disabilities Act provided that "[n]othing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any…law of any State…that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter"); *L.P. Acquisition Co. v. Tyson*, 772 F.2d 201, 205 (6th Cir. 1985) (state securities statute does not violate the Commerce Clause "because the state is regulating in an area reserved to the states by federal securities legislation"); *People ex rel State Bar Resources Bd. v. Wilmhurst*, 68 Cal. App. 4th 1332, 1345 (1999) (holding "the pre-emption waiver" in the Federal Clean Air Act "demonstrates an intent by Congress to grant California the broadest possible discretion").[9]

Sirius XM's characterization of § 301(c) as a "savings clause" does not change the analysis and does not make it a savings clause.  A savings clause "is generally used in a repealing act to preserve rights and claims that would otherwise be lost."  *Black's Law Dictionary* at 1461 (9th ed.).  Section 301(c) did not repeal anything.  Section 301(c)

---

[9] In contrast to these cases, Sirius XM's reliance on *American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) is of no help since that case did not involve a statutory scheme in which Congress authorized states to regulate interstate activities.  Moreover, because Congress authorized state protection of pre-1972 recordings, the balancing test described in *Pike v. Bruce Church*, 397 U.S. 137 (1970) is irrelevant.  *Shamrock Farms v. Veneman*, 146 F.3d 1177, 1179-80 (9th Cir. 1998).  Once Congress authorizes state action, there is nothing to balance.  And, of course, if there is no regulation in the first place, then there is certainly nothing to balance.

affirmatively cedes to the states the exclusive power to provide prospective protection for pre-1972 Recordings.[10]  As explained in one of the leading copyright treatises:

> General preemption is directed toward material that is…protected under
> the [Copyright] Act.  The purpose of preemption for this material is to
> prevent state laws from conflicting with federal law.  ***By contrast***, Section
> 301(c) is directed toward material (pre-1972 sound recordings) which
> Congress has expressly told the states that they may protect. . . .States are
> thus free to extend to pre-1972 sound recordings the full panoply of rights
> granted to original works of authorship by the Federal Copyright ***and***
> ***beyond*** (***for example, a performance right for analog and digital***).

5 W.F. Patry, *Patry On Copyright*, § 18:55 at 18-198 (2010 ed.) (emphasis added).

## IV.    THE SUMMARY JUDGMENT ORDER DOES NOT MEET THE STANDARD FOR CERTIFICATION.

In its motion, Sirius XM treats requests for interlocutory appeal as if they were the rule rather than a very narrow exception to the general rule that appellate review of a district court ruling should not occur until after entry of a final judgment.  *See* 28 U.S.C. § 1291; *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) ("Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."); *McCue v. City of N.Y.*, 521 F.3d 169, 202 (2d Cir. 2008) (same).

---

[10] The savings clause at issue in *New England Power Co. v. New Hampshire*, 455 U.S. 331, 341 (1982) provided that the federal regulation "shall not…deprive a State or State commission of its ***lawful authority now exercised*** over the exportation of hydroelectric energy which is transmitted across a State line." (Emphasis added).  Thus, by its own terms, it "did no more than leave standing whatever valid state laws existed."  *Id*.  That is far different from the ***prospective*** broad and unlimited grant of power to the states under § 301(c) that exists "until February 15, 2067."

It is for this reason that "[f]inality as a condition of review is a historic characteristic of federal appellate procedure." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 146 (E.D.N.Y. 1999) (quoting *Cobbledick v. United States*, 309 U.S. 323, 324 (1940)) ; *see also In re Subpoenas to Local 478, Int'l Union of Operating Eng'rs & Ben. Funds*, 708 F.2d 65, 68  (2d Cir. 1983) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974) (Embodied in the finality requirement is "a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.")  And a decision is not final "until there has been a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (citation omitted).

Because the summary judgment order does not end this case, to invoke the limited exception to the final judgment rule, Sirius XM must establish that the order: (1) involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal from that order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b) ; *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014) ("The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met.")  Even then, since Section 1292(b) is a departure from the normal rule, it is construed narrowly, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 174 F. Supp. 2d 4, 7 (S.D.N.Y. 2001), is to be "applied sparingly and only in exceptional cases," *Carlenstolpe v. Merck & Co.*, 1986 U.S. Dist. LEXIS 19375 *1-2 (S.D.N.Y. Oct. 7, 1986), "was not intended merely to provide review of difficult rulings in hard cases," *McCann v. Communs. Design Corp.*, 775 F. Supp. 1506, 1534 (D. Conn. 1991), and should not be used where it would prolong the litigation.  *McCulloch Intl. Airlines v. Anne Storch Intl.*, 1975 U.S. Dist. LEXIS 15987 *6 (S.D.N.Y. Sept. 26, 1975).

A.    **Sirius XM's Motion Fails to Establish a Controlling Question of Law**.

In seeking certification of the summary judgment order, Sirius XM ignores the fact that the issues it wants to certify relate only to one aspect of this case (performance). However, the issues in this case are much broader than just performance and include Flo & Eddie's claims resulting from Sirius XM's unauthorized reproduction and distribution of pre-1972 recordings. While Sirius XM's public performance of pre-1972 recordings certainly violates New York law, so too does Sirius XM's reproduction and distribution of those recordings. Sirius XM does not seek certification of any issue relating to its reproduction and distribution of pre-1972 recordings and cannot dispute their separate basis for imposing liability.

Under any analysis, the limited issues for which Sirius XM seeks certification will not terminate the litigation or materially advance its ultimate termination; therefore, they are not "controlling" under § 1292(b).  *In re Facebook, Inc.*, 986 F. Supp. 2d 428, 479 (S.D.N.Y. 2014). The additional grounds for recovery in this case completely undermine Sirius XM's argument that the summary judgment order is appropriate for interlocutory appeal.  *See Analect LLC v. Fifth Third Bancorp*, 2009 U.S. Dist. LEXIS 73590 *13 (E.D.N.Y. Aug. 19, 2009) (certification denied where reversal would not terminate action; *SEC v. Straub*, 2013 U.S. Dist. LEXIS 116483 *23 (S.D.N.Y. Aug. 5, 2013) (same).

Sirius XM cannot mask its failure to satisfy its burden of showing that there is a controlling question of law by citing District Court cases that the Second Circuit deemed unworthy of certification.  Indeed, although Sirius XM cites *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347 (S.D.N.Y. 2005) and *N.Y. Racing Ass'n v. Perlmutter Publ.*, 959 F. Supp. 578 (N.D.N.Y. 1997), the Second Circuit denied certification in both of those cases.  *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth*, 02-cv-07659 (SAS) (Dkt. 54); *N.Y. Racing Ass'n v. Perlmutter Publ.*, 95-cv-00994 (FJS) (Dkt. 37).  The fact

that the Second Circuit rejected certification in these cases means that the required showings were insufficient.

      **B.**      <u>**There is No Split In The Law That Presents Any Substantial Grounds For Difference of Opinion**</u>.

When Sirius XM's argument that there is a substantial ground for difference of opinion is stripped of its *Whiteman* hyperbole, what is left is a perfunctory argument that is based on nothing more than Sirius XM's disagreement with the summary judgment order.  However, that has never been a sufficient basis to allow an interlocutory appeal.  *Analect LLC*, LEXIS 73590 *16 ("Had Congress thought fit to make mere dissatisfaction with any district court order the sole and satisfactory ground for immediate appeal, it would have devised a system of piecemeal appeals.")

What Sirius XM must show – but cannot – is that courts are in disagreement regarding the scope of rights in pre-1972 recordings under New York law.  *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC*, 470 B.R. 257, 271 (E.D.N.Y. 2012) ("[t]he submission of conflicting case law is important in persuading the Court that there exists substantial doubt about the law.") *DeVittorio v. Hall*, 2008 U.S. Dist. LEXIS 6595 *14-15 (S.D.N.Y. Jan. 25, 2008) (same).  Moreover, a substantial difference of opinion does not exist just because the question is a matter of first impression or a court is the first to rule on a matter.  *In re Flor v. Bot Fin. Corp.*, 79 F.3d 281, 284 (2nd Cir. 1996) ("the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate substantial ground for difference of opinion."); *see also United States v. Acquest Transit, LLC*, 2014 U.S. Dist. LEXIS 88907 *5 (W.D.N.Y. June 27, 2014) ("substantial ground for difference of opinion does not exist merely because there is a dearth of cases") (citations omitted).

Sirius XM has not cited a single case that conflicts with the summary judgment order. Significantly, the summary judgment order was not even the first decision in this District to find liability under New York law for the unauthorized public performance of pre-1972 recordings. *Capitol Records LLC v. Harrison Greenwich LLC*, No. 65224 (N.Y. Sup. Ct. May 13, 2014) (clarifying that the prior grant of summary judgment reported at *Capitol Records, LLC v. Harrison Greenwich, LLC*, 984 N.Y.S.2d 274 (2014) included the unauthorized public performance of The Rumor Recording); *Capitol Records LLC v. Escape Media Group, Inc.*, Case No. 12-cv-06646 (Dkt. 90) (Magistrate's May 28, 2014, Report and Recommendation finding Escape Media's Internet streaming service (Grooveshark) liable for common law copyright infringement for the digital performance of pre-1972 sound recordings.)[11]

In a final throw away sentence, Sirius XM also contends that the Court's dormant Commerce Clause ruling conflicts with "controlling authorities." As set forth above, Sirius XM is wrong as to the law and is wrong that this perfunctory sentence satisfies its burden to show that there are substantial ground for difference of opinion.[12]

C. **An Interlocutory Appeal Would Dramatically Slow Down, Not Speed Up, This Litigation**.

Like many defendants, from the outset of this litigation, Sirius XM has been in delay mode – and there can be no bigger delay than stopping the litigation for an appeal to the Second Circuit that will inevitably take many years and will only touch on one of the many issues in the

---

[11] Escape Media filed objections to that Report and Recommendation with District Judge Alison Nathan. However, those objections did not specifically address any issues regarding pre-1972 recordings. (Dkt. 94) As of this filing, no ruling has been made on the Objections.

[12] Once again, Sirius XM relies on an opinion from a District Court case that the Second Circuit deemed unworthy of certification. Indeed, Sirius XM cited *Republic of Colom. v. Diageo N. Am., Inc.*, 619 F. Supp. 2d 7, 11(E.D.N.Y. 2007) for the proposition that "novelty and complexity of issues...give[s] rise to a substantial ground for disagreement." The Second Circuit saw it differently. *See Republic of Colom. v. Diageo N. Am., Inc.*, 04-cv-4372 (NGG) (Dkt. 137).

case.  Regardless of how the Second Circuit rules on the issues that Sirius XM wants certified, the case is going to be remanded back to the District Court for trial on the remaining issues. Therefore, under any analysis, an interlocutory appeal will slow this case down and will not materially advance the litigation.  That shortcoming is, by itself, fatal to Sirius XM's motion. *Isra Fruit, Ltd. v. Agrexco Agric. Exp. Co.*, 804 F.2d 24, 26 (2d Cir. 1986) (denying certification where determination on appeal would result in "no appreciable saving of time"); *see also Analect*, LEXIS 73590 *19 (denying certification where it would only serve to delay these proceedings).  This is especially true here given that any decision by the Second Circuit will most certainly come long after any scheduled trial date.

Finally, although their music is timeless, the artists who created pre-1972 recordings are aging and depend on the royalties from a marketplace that has been ravaged by piracy.  The artists who hope to benefit from this litigation are necessarily going to suffer tremendously from the delay that would result from an interlocutory appeal.  That is an added reason to deny certification.  *In re Conseco Life Ins. Cost of Ins. Litig.*, 2005 U.S. Dist. LEXIS 45538 *9 (C.D. Cal. 2005) (considering "the advanced ages of so many class members" in denying certification). This case will be to trial long before any issues on appeal can even be briefed (much less ruled

on).  At the conclusion of trial, Sirius XM can file an appeal that is actually permitted by the

Federal Rules.[13]

Dated:  December 10, 2014   GRADSTEIN & MARZANO, P.C.
            HENRY GRADSTEIN
            MARYANN R. MARZANO
            HARVEY W. GELLER


           By: _____ */s/ Harvey W. Geller*
               Harvey W. Geller
               Attorneys for Plaintiff
               FLO & EDDIE, INC.

---

[13] Sirius XM's reliance on *Transp. Workers*, 358 F. Supp. 2d at 353 and *Rep. of Columbia*, 619 F.Supp. 2d at 556 is misplaced as noted above.  So too is its reliance on *Pinter v. City of N.Y.*, 976 F. Supp. 2d 539, 575 (S.D.N.Y. 2013).  The Second Circuit denied certification in that case as well.  *See Pinter v. City of N.Y.*, 09-civ-7841 (SAS) (Dkt. 115).