**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>        Defendants. | Civil Action No.:13-CIV-5784(CM)(HP) |

## FLO & EDDIE'S OPPOSITION TO SIRIUS XM'S RESPONSE TO ORDER TO SHOW CAUSE

Henry Gradstein
Maryann R. Marzano
Harvey W. Geller
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100
hgradstein@gradstein.com
mmarzano@gradstein.com
hgeller@gradstein.com

and

Evan S. Cohen
1180 Beverly Drive, Suite 510
Los Angeles, California 90035
Telephone: 310-556-9800
Facsimile 310-556-9801
esc@maifesto.com

Attorneys for Plaintiff Flo & Eddie, Inc.

# TABLE OF CONTENTS

I.  INTRODUCTION. ................................................................................................................ 1

II.  OWNERSHIP ISSUES. ..................................................................................................... 2

III.  LICENSE ISSUES. ............................................................................................................ 4

IV.  WAIVER AND ESTOPPEL ISSUES. .............................................................................. 9

V.  STATUTE OF LIMITATIONS. ....................................................................................... 15

VI.  PIKE BALANCING TEST .............................................................................................. 18

VII.  CLASS ISSUES. .............................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Am. Plastic Equip., Inc. v. Toytrackerz*, LLC, 2008 U.S. Dist.
LEXIS 26944 * 46-50 (D. Kan. Mar. 31, 2008) ................................ 4

*Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33 (2d Cir. 1993) ............................. 11

*Bassick Mfg. Co. v. Adams Grease Gun Corp.*, 54 F.2d 285 (2d Cir. 1931) ................................. 5

*Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471 (2d Cir. 2004) ................................... 10

*Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540 (2005) ............................................. 18

*Capitol Records, LLC v. Harrison Greenwich, LLC*, 986 N.Y.S.2d 837 (Sup. Ct. 2014) ........... 18

*Carson v. Bethlehem Steel Corp.*, 82 F.3d 157 (7th Cir. 1996) ....................................... 3

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
56 F.3d 359 (2d Cir. 1995) .......................................................... 4, 9

*Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012) ................................... 19

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2012) ......................... 19

*Comvest Consulting, Inc. v. W.R.S.B. Dev. Co., LLC.*, 266 A.D.2d 890,
698 N.Y.S.2d 807 (App. Div. 1999) (mem.) ................................ 10

*Design Options v. Bellepointe, Inc.*, 940 F. Supp. 86 (S.D.N.Y. 1996) ........................................ 9

*EchoStar Satellite L.L.C. v. ESPN, Inc.*, 79 A.D.3d 614, 914 N.Y.S.2d 35. 39
(App. Div. 2010) ........................................................................ 10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, United States District Court, Central District of
California, Case No. 13-cv-05693 PSG ................................... 3, 8, 9

*Gassiott v. Prudential Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 93136,
2009 WL 3188428 (S.D.N.Y. Oct. 6, 2009) .............................. 17

*Grant v. Esquire, Inc.*, 367 F. Supp. 876 (S.D.N.Y.1973) .......................... 11

*Greenlight Capital, Inc. v. GreenLight (Switz.) S.A.*, 2005 U.S. Dist.
LEXIS 2 *7-8 (S.D.N.Y. Jan. 3, 2005) ...................................... 17

*In re Brazier Forest Prods., Inc.*, 921 F.2d 221 (9th Cir.1990) ................................. 15

*In re County of Erie*, 546 F.3d 222 (2d Cir. 2008) ....................................................... 14

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009) ............... 13

*Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80 (2d Cir. 1961) .................................... 4

*Marcin Eng'g LLC v. The Founder at Grizzly Ranch, LLC*,
219 F.R.D. 516 (D. Colo. 2003) ............................................................................. 3

*Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996)............................................................ 15, 16

*Metropolitan Edison Co. v. NLRB*, 460 U.S. 693 (1983) .................................................. 11

*NLRB v. New York Tel. Co.*, 930 F.2d 1009 (2d Cir. 1991) ............................................... 11

*Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984)........................................................... 16

*Oppenheimer & Co., Inc. v Northstar Agri Indus.*, LLC, 2013 N.Y. Misc. LEXIS 5142,
18-19, 2013 NY Slip Op 32832(U), 10-11 (N.Y. Sup. Ct. Jan. 2, 2013) ................... 17

*Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978)................................................... 19

*Paramount Pictures Corp. v. Carol Pub'g Grp.*, 11 F. Supp. 2d 329 (S.D.N.Y. 1998)............... 10

*Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997) ................... 14

*Petrella v. MGM*, 134 S.Ct. 1962 (2014)............................................................... 16

*Pike v. Bruce Church*, 397 U.S. 137 (1970) ........................................................... 18

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295 (2d Cir. 1996) ...................................... 12

*Revlon, Inc. v. Crest Distributors, Inc.*, 19 Misc. 2d 426,
190 N.Y.S.2d 745 (N.Y. Sup. Ct. 1959) .................................................................... 17

*SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301 (S.D.N.Y. 2000) ........................ 8

*Shamrock Farms v. Veneman*, 146 F.3d 1177 (9th Cir. 1998) ........................................... 19

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*,
211 F.3d 21 (2d Cir. 2000)................................................................................... 8

*Stonewell Corp. v. Conestoga Title Ins. Co.*, 2009 U.S. Dist. LEXIS 88563
(S.D.N.Y. Sept. 24, 2009)................................................................................. 4

*TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) ...................................... 4

*Tray-Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65 (2d Cir. 1993) ............................................ 11

*Trustforte Corp. v. Eisen*, 10 Misc. 3d 1064A, 814 N.Y.S.2d 565 (Table) (N.Y.Sup. 2005) ...... 17

*Twentieth Century Fox Film Corp. v. Marvel Enters.*, 2002 U.S. Dist. LEXIS 14682 *6 (S.D.N.Y. Aug. 6, 2002) ............................................................................................................ 7

*United States v. 163 Renwick St.*, 859 F. Supp. 93 (S.D.N.Y. 1994) ............................................ 3

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ....................................................... 13, 14

*Urbont v. Sony Music Entm't*, 863 F. Supp. 2d 279 (S.D.N.Y. 2012) ......................................... 16

*Vineberg v. Bissonnette*, 548 F.3d 50 (1st Cir. 2008) ..................................................................... 3

*Walsh v. Andorn*, 33 N.Y.2d 503 (1974) ...................................................................................... 17

*Weber v. Geffen Records*, 63 F. Supp. 2d 458 (S.D.N.Y. 1999) ................................................... 16

*Wilchombe v. TeeVee Toons*, Inc., 555 F.3d 949 (11th Cir. 2009) ................................................ 9

## **Rules**

District Court of California, Central District, Local Rules 56-2 and 56-3 .................................... 8

Fed. R. Civ. P. 30(b)(6) ......................................................................................................... 5, 7, 8, 12

# I.    INTRODUCTION.

At the April 3, 2014, Interim Pretrial Conference, Sirius XM Radio, Inc. ("Sirius XM") insisted – over the objection of Flo & Eddie, Inc. ("Flo & Eddie") – that liability discovery should be cut-off so that it could pursue an early motion for summary judgment.  According to Sirius XM, no more discovery was needed for it to win this case and no more discovery should be allowed.  The Court granted Sirius XM's request.  Sirius XM then filed its motion for summary judgment, which consisted of a 40-page opening brief, a 31-page Statement of Uncontested Material Facts, and a 15-page reply brief.  Not once in any of those filings did Sirius XM ever suggest that it needed more discovery to support its defenses, that there were meritorious defenses that it was saving for another day, or that there was even a single triable issue of fact.

Then, the one thing happened that Sirius XM never anticipated – it lost its motion for summary judgment.  That ruling not only decided every legal issue necessary for Sirius XM's motion for summary judgment to be denied, but it also decided every legal issue necessary for summary judgment to be entered in favor of Flo & Eddie on liability.  It was for this reason that the Court issued its Order to Show Cause (the "OSC").  After the court issued its OSC, Sirius XM changed counsel and for the first time claimed in its Response to the OSC that it needed more discovery in order to pursue what it now characterizes as five "fact intensive defenses and issues" (*i.e.* "Ownership," "License," "Waiver and Estoppel," "Statute of Limitations," and "*Pike* Balancing Test.")  Liability discovery is over, but more importantly, so too are those defenses.

Sirius XM's Response to the OSC results from the same fictional analysis that permeated Sirius XM's ill-fated motion for reconsideration and fails on every level to establish that any of the five defenses has any merit under the law.  Moreover, several of these defenses also suffer

from another serious problem – collateral estoppel. Indeed, between the time that the motion for summary judgment was briefed in this case and this Court's summary judgment ruling, Sirius XM had summary judgment entered against it in the related California action. The ruling in California now prevents Sirius XM from re-litigating issues in this case that it has already lost.

## II.    <u>OWNERSHIP ISSUES</u>.

As the undisputed evidence established in connection with the summary judgment briefing, for over *four decades*, Flo & Eddie has exclusively owned and exploited The Turtles' recordings. **(Volman Decl. ¶¶ 2-7, Dkt. 57)**[1] This was not a controversial proposition. In fact, Sirius XM made the same point in support of its motion. **(Sirius XM Statement of Uncontested Material Facts ¶¶ 1-2, 16-20, Dkt. 47)** At no point did Sirius XM challenge Flo & Eddie's ownership of these recordings, nor could it. The sudden assertion that Flo & Eddie's chain of title is "complex and ambiguous" **(Response to OSC p. 2)** does not make it so and is belied by the evidence.

Thus, it was not surprising that this Court had no problem concluding in its summary judgment order that Flo & Eddie owned The Turtles' recordings. **(Summary Judgment Order, Dkt. 88-1, p. 2)** ("Volman and Kaylan purchased the remaining Turtles' members' interests in the recordings, and ultimately transferred all ownership interests in the recordings to Flo & Eddie.") That is the exact issue that Sirius XM's new counsel claims is still an open issue. It is not. It is also the same exact issue that was litigated in California. Indeed, in granting Flo & Eddie's motion for summary judgment, Judge Philip Gutierrez concluded that "[t]oday, Flo & Eddie owns all rights to The Turtles' master sound recordings." *See Flo & Eddie, Inc. v. Sirius*

---

[1] All declarations and exhibits referred to herein were filed in opposition to Sirius XM's motion for summary judgment.

*XM Radio, Inc.,* United States District Court, Central District of California, Case No. 13-cv-05693 PSG (Dkt. 117, p. 1)[2]

In the face of these two rulings, it is preposterous for Sirius XM to now suggest that ownership has not been established or that Flo & Eddie must also take the additional step of proving "that there are no competing claims of third parties." **(Response to OSC p. 3)** Flo & Eddie established its owenrship. The law does not require it to also prove a negative (*i.e.* that there are no competing claims). *See United States v. 163 Renwick St.*, 859 F. Supp. 93, 96 (S.D.N.Y. 1994) ("Ordinarily at common law, nobody is required to prove a negative.") To the extent that Sirius XM thought that there were competing claims (and there are not), it was incumbent on it to puruse discovery of them before it implored the Court to cut-off discovery so that it could file its motion for summary judgment. Sirius XM's change of counsel does not permit it to re-open discovery. *Marcin Eng'g LLC v. The Founder at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo. 2003) ("That new counsel is dissatisfied with the state of the case it inherited is not grounds under this authority for reopening discovery long after the court-ordered deadlines have passed."); *Vineberg v. Bissonnette*, 548 F.3d 50, 55 (1st Cir. 2008) ("The engagement of a new attorney, without more, does not compel – or even necessarily favor -- the reopening of a previously closed period of discovery."); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) ("There is no principle that each new attorney for a litigant must have an independent opportunity to conduct discovery. Shortcomings in counsel's work come to rest with the party represented.").

---

[2] Like this case, in the California action, Flo & Eddie alleged on behalf of itself and a putative class of owners of pre-1972 recordings that Sirius XM was liable under California law for the unauthorized reproduction, distribution, and performance of pre-1972 recordings that Sirius XM engaged in as part of its satellite and internet services in California.

In any event, more discovery in this case would not do Sirius XM any good because Judge Gutierrez's summary judgment order collaterally estops Sirius XM from relitigating the ownership issue in this litigation. Indeed: (1) the ownership issue was the same in both the California and New York actions; (2) the ownership issue was litigated and decided in the California action; (3) Sirius XM had a "full and fair opportunity" to litigate the ownership issue in the California action; and (4) ownership was necessary to support a valid and final judgment on the merits. That is all that is needed to now bar Sirius XM from trying to relitigate that very same issue in this litigation. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *see also Stonewell Corp. v. Conestoga Title Ins. Co.*, 2009 U.S. Dist. LEXIS 88563 (S.D.N.Y. Sept. 24, 2009) (collateral estoppel prevented relitigation of ownership issues that were subsumed within order determining which assets were owned by the plaintiff); *Am. Plastic Equip., Inc. v. Toytrackerz*, LLC, 2008 U.S. Dist. LEXIS 26944 * 46-50 (D. Kan. Mar. 31, 2008) (holding that collateral estoppel prevented relitigation of ownership of a trademark).[3]

III. **LICENSE ISSUES**.

After having testified extensively in deposition that it did not have, and did not need, any licenses for pre-1972 recordings, Sirius XM reversed course in its Response to the OSC and now claims that its use of Flo & Eddie's recordings was licensed and, therefore, Flo & Eddie have "not met their burden of establishing that Sirius XM's performance" of those recordings was unauthorized. **(Response to OSC p. 3)** Of course, it is Sirius XM's burden to show that it was

---

[3] A judgment does not have to be final under 28 U.S.C. § 1291 for it to be considered final for collateral estoppel purposes. *TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370, 376 (S.D.N.Y. 1999). For collateral estoppel, a judgment is final if "the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370, 376 (S.D.N.Y. 1999) (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80 (2d Cir. 1961))

licensed. *Bassick Mfg. Co. v. Adams Grease Gun Corp.*, 54 F.2d 285, 286 (2d Cir. 1931). But it does not matter whose burden it is (or was), the facts are not going to change and neither is the testimony in this case.

In order to flesh out Sirius XM's so-called "license" defense, Flo & Eddie served a Rule 30(b)(6) deposition notice seeking a witness regarding: (1) agreements and licenses which grant or give to Sirius XM the right to reproduce or copy (or authorize others to reproduce or copy) pre-1972 recordings, including The Turtles' recordings; (2) agreements and licenses which grant or give Sirius XM the right to perform (or authorize others to perform) pre-1972 recordings, including The Turtles' recordings; and (3) agreements and licenses which grant or give Sirius XM the right to distribute (or authorize others to distribute) pre-1972 recordings, including The Turtles' recordings. **(Geller Decl. ¶ 3, Ex. 2, Dkt. 59-2)**

In response to Flo & Eddie's notice, Sirius XM designated David Frear, its Executive Vice President and Chief Financial Officer. Mr. Frear testified repeatedly that Sirius XM has no licenses to exploit pre-1972 recordings.

> Q. At any point in time has Sirius XM ever entered into any license which granted it the right to copy any of [The Turtles' recordings]?
>
> A. To my knowledge, we've never entered into discussions with The Turtles with respect to their songs. That -- my understanding is that they're in the public domain and so we simply are using them under that theory.

**(Geller Decl. ¶ 4, Ex. 3 [Frear Depo. 75:13-76:2], Dkt. 59-3)**

* * *

> Q. Did you make any attempt in preparation for your deposition to learn what licenses Sirius XM had entered into with respect to pre-1972 recordings?
>
> A. Sirius XM, to my knowledge, has never entered into a license exclusively for pre-1972 recordings.

\* \* \*

Q. So, Sirius XM does not believe that it needs a license to exploit pre-1972 recordings in connection with its satellite or Internet services, correct?

A. That's correct.

Q. Okay. And to the extent any such license exists, it is merely because it was included as an administrative convenience?

MR. RICH: Object to the form. You can answer.
A. I believe that's correct.

\* \* \*

Q. Mr. Frear, does Sirius XM have a license to copy each and every recording -- excuse me -- each and every pre-'72 recording that is in the Prophet database?

A. I don't believe so, no.

Q. Does Sirius XM have a license to copy each and every pre-'72 recording in the Dalet or Dalet database?

A. I don't believe so.

\* \* \*

Q. Does Sirius XM have a license to copy each and every recording that it copies to its playout server -- each and every pre-'72 recording that it copies to its playout server?

A. I don't believe so.

\* \* \*

Q. Does Sirius XM have a license -- using your definition of "reproduce," does Sirius XM have a license to reproduce each and every pre-'72 recording in the Prophet database?

A. I don't believe so.

Q. Does Sirius XM have a license to reproduce each and every pre-'72 recording in the Dalet databases?

A. I don't believe so.

Q. Does Sirius XM have a license to stream each and every pre-'72 recording that it performs as part of its satellite services?

MR. RICH: Objection; calls for a legal conclusion, vague. If you're able to answer, you can answer.

A. I don't believe any such license is required.

Q. So, the answer to my question is it does not have that license?

A. Yes, we do not have that license.

Q. Correct. And what -- and does Sirius XM have a license to each and every pre-'72 recording that it performs as part of its Internet service?

A. I don't believe so.

**(Geller Decl. ¶ 21, Ex. 23 [Frear Depo. 58:10-16, 66:16-67:2, 77:20-81:15; 90:11-92:25], Dkt. 80-16)**

As Sirius XM's corporate designee, Mr. Frear's blanket "no license" responses are binding on Sirius XM. *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 2002 U.S. Dist. LEXIS 14682 *6 (S.D.N.Y. Aug. 6, 2002) ("A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity.") (citation omitted) As confirmed by Mr. Frear, Sirius XM's position has always been that it did not have licenses and that it did not need any licenses.

Mr. Frear's testimony in this case does not stand in isolation. Indeed, in connection with Flo & Eddie's motion for summary judgment in the California action, Sirius XM never disputed Flo & Eddie's contention that Sirius XM had no licenses. Indeed, Undisputed Fact No. 24 in Flo & Eddie's Separate Statement stated that "Sirius XM copied, reproduced, and performed the pre-1972 recordings without a license, and without paying royalties." The only part of Undisputed Fact No. 24 that Sirius XM disputed was that certain of its copying did not take place in

California.  *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* United States District Court, Central

District of California, Case No. 13-cv-05693 PSG, Dkt. 87 at p. 19.  At no point did Sirius XM

dispute that portion of Undisputed Fact No. 24 that stated that it did not have licenses.  Sirius

XM's failure to do so constituted an admission that the fact was true.  *See* California Central

District Local Rule 56-2 (party obligated to set "forth all material facts as to which it is

contended there exists a genuine dispute") and Local Rule 56-3 (court may assume that the

material facts as claimed are admitted unless controverted); s*ee also*, Fed. R. Civ. P.

56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may

"consider the fact undisputed for purposes of the motion").

Not surprisingly, in its Response to the OSC, Sirius XM omitted any discussion of Mr.

Frear's testimony (even though this testimony was submitted by Flo & Eddie in opposition to

Sirius XM's motion for summary judgment in this case) and totally ignored its Statement of

Genuine Issues in the California action.  In its place, Sirius XM cites cases that discuss implied

licenses and suggests that somehow those cases help it.  They do not.  "Courts have found

implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's]

request and handed it over, intending that [the other] copy and distribute it.'"  *SmithKline*

*Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)

(citation omitted); *see also SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 317

(S.D.N.Y. 2000) ("An implied license can only exist where an author creates a copyrighted work

with knowledge and intent that the work would be used by another for a specific purpose.");

*Wilchombe v. TeeVee Toons*, Inc., 555 F.3d 949, 956 (11th Cir. 2009) ("An implied nonexclusive

license is created when one party creates a work at another party's request and hands it over,

intending that the other party copy and distribute it.")

Sirius XM never explains how recordings that were created decades before Sirius XM ever existed could possibly have been created at Sirius XM's request. Similarly, Sirius XM never explains how the authors of those recordings could possibly have created them with the "knowledge and intent" that they were going to be used by a company that did not yet exist in connection with satellite and internet services that had not yet been invented. The unilateral expectations of Sirius XM developed decades after the works in question were created, and after it argued in its motion for summary judgment that no licenses were necessary, cannot give rise to an implied license. *Design Options v. Bellepointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996) (holding that implied license requires a meeting of the minds).

Finally, as with the ownership issue, Judge Gutierrez's summary judgment order collaterally estops Sirius XM from relitigating the license issues in this litigation. In granting summary judgment for Flo & Eddie, Judge Gutierrez held that Sirius XM was operating its services without licenses and without paying royalties. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, United States District Court, Central District of California, Case No. 13-cv-05693 PSG, Dkt. 117 at p. 2. This is the same issue that Sirius XM now wants to litigate in this case, the same issue that Sirius XM had a "full and fair opportunity" to litigate in the California action, and that same issue that was necessary to support Judge Gutierrez's summary judgment ruling. Sirius XM is collaterally estopped from seeking a second bite at the apple. *Cent. Hudson Gas & Elec. Corp.*, *supra*.

## IV.     **WAIVER AND ESTOPPEL ISSUES.**

In an attempt to prop up its waiver and estoppel defenses, Sirius XM misstates its burden of proof as to each defense and then offers only innocuous facts in support of its erroneous view

of the law.  Waiver and estoppel require specific showings that Sirius XM does not even attempt

to make, nor can it ever make.

Sirius XM's waiver argument consists solely of the *ipse dixit* that Flo & Eddie have

waived their right to "assert its performance and reproduction claims by 'voluntar[ily]" and

"intentional[ly]" relinquishing them.  In arriving at this conclusion, Sirius XM mistakenly

equates "voluntary" and "intentional" relinquishment of a known right with the alleged silence or

inaction by Flo & Eddie that supposedly preceded the filing of this lawsuit.  However, silence

and inaction have never been sufficient under New York law to show a knowing and voluntary

intent to waive rights.  *See, e.g., EchoStar Satellite L.L.C. v. ESPN, Inc.*, 79 A.D.3d 614, 914

N.Y.S.2d 35. 39 (App. Div. 2010) ("[M]ere silence or inaction . . . are insufficient to establish an

intent to waive a known right."); *Comvest Consulting, Inc. v. W.R.S.B. Dev. Co., LLC.*, 266

A.D.2d 890, 698 N.Y.S.2d 807, 808 (App. Div. 1999) (mem.) ("The waiver defense is

inapplicable because there is no indication that plaintiff voluntarily and intentionally

relinquished its rights to the commission, and a waiver is not effected by mere silence, delay or

inaction.")

Moreover, the owner of a copyright has no obligation to institute legal proceedings

against any particular defendant, and any asserted failure to do so is not an abandonment or

relinquishment of rights.  *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 483 (2d Cir.

2004) ("failure to pursue third-party infringers has regularly been rejected as a defense to

copyright infringement or as an indication of abandonment"); *see also Paramount Pictures Corp.*

*v. Carol Pub'g Grp.*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) (holding that there is no duty to

instigate legal proceedings); *Petrella v. MGM*, 134 S. Ct. 1962, 1976 (2014) ("It is hardly

incumbent on copyright owners, however, to challenge each and every actionable

infringement."); *Grant v. Esquire, Inc.*, 367 F. Supp. 876, 880 (S.D.N.Y.1973) (property rights are not lost merely because a plaintiff previously chose not to exercise them).

Sirius XM also ignores the fact that the "conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred." *Tray-Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993); *see Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 36 (2d Cir. 1993). Thus, courts will not find a waiver unless "the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." *NLRB v. New York Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991). As the party asserting waiver, Sirius XM carries the burden of proving that these requirements have been met. *Id.* (Party asserting waiver "bears the weighty burden of establishing that a 'clear and unmistakable' waiver has occurred." (quoting *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)). Sirius XM's non-sequitor argument that the failure to ask it to "stop, obtain a license, or make a payment" **(Response to OSC at p. 5.)** means that Flo & Eddie was aware of its rights and made the conscious choice to waive them finds no support in the law.

Equally meritless is Sirius XM's estoppel argument, which also requires far more than Sirius XM's purported reliance on Eddie & Flo's alleged silence or inaction. "Under New York law, the party asserting estoppel must show that the party alleged to be estopped: (1) [engaged in] conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct [would] be acted upon by the other party; and (3) [knew] the real facts. […] In addition, the party alleging estoppel must also show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301-302 (2d Cir. 1996) (internal quotes and citations omitted).

Not only has Sirius XM failed to demonstrate any of these elements as to affirmative conduct on Flo & Eddie's part, its own testimony establishes that it never relied on any conduct by Flo & Eddie in electing not to get licenses or pay royalties to owners of pre-1972 sound recordings. Indeed, in response to Flo & Eddie's Fed. R. Civ. P. 30(b)(6) notice seeking testimony as to the "decision or decisions by Sirius XM not to license" the right to reproduce, copy, or perform pre-1972 recordings, Mr. Frear testified that pre-1972 recordings are in the public domain, do not need to be licensed, and the decision not to license them was based solely on Sirius XM's legal analysis (which Sirius XM would not disclose) – *and nothing else*.

> Q. Okay. My question was: Can you separate the legal advice that went into the decision from the non-legal advice that went into the decision?
>
> A. I don't know what advice there would be involved in the -- it seems to me that it's a legal matter.
>
> Q. It's just a yes-or-no question. Can you separate the two?
>
> A. I believe it's a legal question.
>
> Q. So, 100 percent of the decision was legal advice?
>
> A. Honestly, I'm hard-pressed to think of what else is involved in the decision other than what the applicable law is.
>
> \* \* \*
>
> Q. Were any factors considered in arriving at the decision that Sirius XM did not need a license pre-1972 recordings in connection with its Internet service or its satellite service other than legal advice?
>
> A. I think -- I think we looked at what the applicable law was and we took advice on the applicable law.
>
> Q. So, does that mean no other factors were considered?
>
> A. Not that I can recall.

**(Geller Decl. ¶ 23, Ex. 25 [Frear Depo., 112:16-115:21, Dkt. 80-18)**

Having testified that that the only factor considered by Sirius XM was its own legal analysis, Sirius XM cannot now suggest that there were other reasons, such as the conduct or

supposed acquiescence of the owners of pre-1972 recordings resulting from their alleged failure to initiate litigation sooner.[4]  If there really were other factors (and Flo & Eddie is not conceding for a moment that there were), the time to identify them was in Mr. Frear's deposition.

Aside from being bound by its deposition testimony, Sirius XM is also barred for another very basic reason from raising additional factors that supposedly influenced its state of mind. Because Sirius XM has blocked all inquiry into the legal advice and communications that it admits influenced its state of mind, it cannot now testify as to any aspect of its state of mind, including that it relied ***in good faith*** on any conduct by the owners of pre-1972 recordings.  The law is clear that a party may not assert that it believed that its conduct was in good faith while at the same time shielding from discovery privileged communications and analysis that bear on that state of mind.  *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *see also Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009).  The selective disclosure of the information that forms the basis for a good faith assertion is not allowed.

In *Bilzerian*, the Second Circuit affirmed the district court's holding that the defendant's proposed testimony about his good faith belief in the legality of his actions would necessarily implicate his communications with counsel, and that the government was entitled to cross-examine him regarding those communications:

> Bilzerian's testimony that he thought his actions were legal would have
> put his knowledge of the law and the basis for his understanding of what
> the law required in issue.  His conversations with counsel regarding the

---

[4] Throughout discovery in this action, Sirius XM has professed complete ignorance regarding the identity of the specific owners of the tens of thousands of pre-1972 recordings exploited by Sirius XM.  As such, it is not clear how Sirius XM can ever contend that it relied on anything said or done by any particular owner.

> legality of his schemes would have been directly relevant in determining
>
> the extent of his knowledge and, as a result, his intent.

*Id*. at 1292.

As courts have made clear, a party "cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny…access to the advice given by counsel where that advice…played a substantial and significant role in formulating the actions taken by [the defendant]." *Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997). The Second Circuit re-affirmed *Bilzerian* in *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), holding that the "assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." *Id*. at 228-29. If a party wants to rely on its purported state of mind regarding legal matters, the party has to open up discovery to all of the putatively privileged matters that informed its thinking or else not testify about its state of mind. *Id*.[5]

Here, Sirius XM confirmed in deposition testimony that legal advice informed its decision to not license pre-1972 recordings. **(Geller Decl. ¶ 23, Ex. 25 [Frear Depo., 112:16-115:21, Dkt. 80-18)** However, Sirius XM also has repeatedly asserted the attorney-client privilege to block both deposition testimony and document discovery that inquired into that legal advice or communications. **(Geller Decl. ¶ 28, Ex. 30, Dkt. 80-25 and 80-26)** Having asserted the attorney-client privilege that would have shed light on its contention that it acted in "good faith reliance," Sirius XM is now not permitted to use its purported "good faith reliance" to support any aspect of its defense in this case, including as part of its estoppel defense.

---

[5] The holding in *Bilzerian* is not limited to those situations where advice of counsel is raised as a defense. *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).

Finally, as with the ownership and licensing issue, Judge Gutierrez's summary judgment order collaterally estops Sirius XM from relitigating the waiver and estoppel issues in this litigation. The ruling granting summary judgment for Flo & Eddie necessarily resolved Sirius XM's waiver and estoppel claims. *See In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir.1990) (Where the nonmoving party bears the burden of proof on an issue at trial, such as an affirmative defense, it must make a sufficient showing to establish the existence of evidence as to all elements essential to its defense to avoid summary judgment).

## V.    __STATUTE OF LIMITATIONS__.

Sirius XM argument that the statute of limitations is a viable defense is based solely on its erroneous analysis of the law. Indeed, Sirius XM purposely blurs the well-recognized distinction in copyright cases between claims establishing ownership (which are subject to a fixed statute of limitations) and claims establishing infringement (which are subject to a rolling statute of limitations). This dichotomy is illustrated in *Merchant v. Levy*, 92 F.3d 51, 56-57 n.8 (2d Cir. 1996), a case that Sirius XM cites for the blanket proposition that a "copyright co-owner [is] time barred from asserting 'co-ownership rights and any remedies that would flow from' ownership three years after claim accrued." **(Response to OSC p. 7)** What Sirius XM omitted from its characterization of *Merchant* is the following statement by the Second Circuit:

> We note that Plaintiffs' cause of action is not based on copyright
> infringement, a point Plaintiffs do not contest on appeal. Our holding here
> does not disturb our previous rulings that a copyright owner's suit for
> infringement is timely if instituted within three years of each infringing act
> for which relief is sought, but recovery is barred for any infringing acts
> occurring more than three years prior to suit. (citation omitted)

*Id*. at n.8.

*Merchant* made very clear that there are different limitations periods under federal law for claims based on establishing ownership versus claims based on infringement.[6] The rolling nature of the limitations period for copyright infringement was confirmed by the Supreme Court in *Petrella v. MGM*, 134 S.Ct. 1962, 1969 (2014):

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs.

The common law in New York is no different. *Urbont v. Sony Music Entm't*, 863 F. Supp. 2d 279, 287 (S.D.N.Y. 2012). In *Urbont*, Sony contended that Urbont's state law claims for common law copyright, unfair competition, and misappropriation were time barred. The District Court disagreed, holding that "each alleged wrongful act gave rise to a separate common law cause of action." *Id*. As the District Court noted: "Our holding finds support from the fact that federal copyright infringement claims are treated in a like manner - as previously described,

---

[6] The distinction between a claim based on ownership and claim based on infringement was ignored by Sirius XM when it cited *Weber v. Geffen Records*, 63 F. Supp. 2d 458 (S.D.N.Y. 1999) for the proposition that "all claims that 'rest[] on the premise that plaintiff had a valid claim to the copyrights' time barred after three years, despite continuing harm." **(Response to OSC at p. 8)** In *Weber*, the issue concerned the federal limitations period applicable to claims for establishing co-ownership of copyrights. The issue of copyright infringement was not even an issue in *Weber*, nor could it have been since co-owners cannot sue each for infringement. *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984).

each act of infringement triggers a separate federal claim for relief." *Id*. at 288. (citation omitted). Based on *Urbont*, Flo & Eddie's infringement claims are timely.[7]

The holding in *Urbont* is also consistent with the law in New York regarding unfair competition. *See Oppenheimer & Co., Inc. v Northstar Agri Indus.*, LLC, 2013 N.Y. Misc. LEXIS 5142, 18-19, 2013 NY Slip Op 32832(U), 10-11 (N.Y. Sup. Ct. Jan. 2, 2013) (where alleged unfair competition was ongoing, it was not barred by the statute of limitations); *Trustforte Corp. v. Eisen*, 10 Misc. 3d 1064A, 814 N.Y.S.2d 565 (Table) (N.Y.Sup. 2005) ("as the doctrine of unfair competition encompasses a broad range of unlawful or immoral business practices, the requisite statutory period is equally flexible and will depend on the underlying alleged actions giving rise to the claim."); *Greenlight Capital, Inc. v. GreenLight (Switz.) S.A.*, 2005 U.S. Dist. LEXIS 2 *7-8 (S.D.N.Y. Jan. 3, 2005) (holding that plaintiff's unfair competition claim, which was predicated on alleged trademark infringement, was timely because it involved ongoing activity); *Revlon, Inc. v. Crest Distributors, Inc.*, 19 Misc. 2d 426, 190 N.Y.S.2d 745 (N.Y. Sup. Ct. 1959) (classifying unfair competition as a continuing wrong).

Sirius XM ignores this clear law and instead focuses on inapposite insurance and pension "installment payment" cases. The issue in those cases concerned whether a contractual right to money that would be paid over time accrued upon the denial of that right or at a later point in time when an installment payment related to the right was due. *See Walsh v. Andorn*, 33 N.Y.2d 503, 506-07 (1974) (entitlement to pension accrued upon death of pensioner and had to be established within six years after that death*); Gassiott v. Prudential Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 93136, 2009 WL 3188428 (S.D.N.Y. Oct. 6, 2009) (claim for breach of insurance policy time barred because lawsuit not filed within the time specified in the policy). Copyright

---

[7] There is no issue in this case regarding competing ownership claims. Sirius XM does not claim to own any of the copyrights it has infringed.

infringement and unfair competition are not contract cases and do not involve installment

payments.  Contrary to Sirius XM's contention, Flo & Eddie does not need to establish a right to

payment; it only needs to show a valid copyright and unauthorized exploitation by Sirius XM.

*Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 563 (2005).  No amount of twisting

by Sirius XM will change this case from a straight forward infringement action, which only

seeks recovery for infringing conduct that occurred during the limitations period, into an

installment payments case.[8]

## VI.   PIKE BALANCING TEST.

This Court has twice rejected Sirius XM's dormant Commerce Clause argument: once in

denying its motion for summary judgment and the second time in denying its motion for

reconsideration.  Sirius XM nevertheless contends in its Response to the OSC that "the Court has

not yet addressed whether applying a New York performance right in pre-1972 sound recordings

to Sirius XM's national broadcasts would violate the Commerce Clause under the balancing test

established in…*Pike v. Bruce Church*, 397 U.S. 137 (1970)."  To the contrary, the Court

expressly rejected this argument in denying Sirius XM's motion for reconsideration when it held

that the test in *Pike* was irrelevant because it only applies to regulations, and the protection of

property rights is not a regulation.[9]  Nothing has changed.  The *Pike* balancing test is not part of

this case and does not prevent the Court from entering summary judgment for Flo & Eddie.

---

[8] As this Court noted in its summary judgment order and as the Court in *Capitol Records, LLC v. Harrison Greenwich, LLC*, 986 N.Y.S.2d 837 (Sup. Ct. 2014) held, the applicable limitations period in New York for common law copyright infringement is six years, not three years as Sirius XM argues.

[9] The balancing test in *Pike* is also irrelevant under Judge Gutierrez's dormant Commerce Clause analysis whereby he found that Congress authorized state protection of pre-1972 recordings in 17 U.S.C. § 301(c).  *Shamrock Farms v. Veneman*, 146 F.3d 1177, 1179-80 (9th Cir. 1998).  Once Congress authorizes state action, there is nothing to balance.

## VII.  CLASS ISSUES.

As a final throw away, Sirius XM makes several scattershot arguments regarding class certification.  All of its arguments are premature (and wrong).  Indeed, at Sirius XM's request, this case was bifurcated and discovery was limited before it was cut-off so that it could file an early motion for summary judgment.  Flo & Eddie has not been permitted to conduct class or damages discovery, which it should be permitted to do before filing its motion for class certification.  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *see also Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298-299 (S.D.N.Y. 2012) ("*Dukes* illustrates the need to develop the record fully before a class motion is considered;" "cases subsequent to *Dukes* emphasize the importance of adjudicating a class motion only after class-related discovery is complete, discovery that often overlaps substantially with the merits").[10]

Sirius XM cannot object to the procedure followed in this case (or claim that it raises due process concerns) since it was the one who requested it.  In any event, as soon at the Court lifts the stay on discovery, Flo & Eddie will complete it and file its motion for class certification.  Until then, the class issues that Sirius XM raises are not ripe.

Dated:  December 29, 2014         GRADSTEIN & MARZANO, P.C.
                                  HENRY GRADSTEIN
                                  MARYANN R. MARZANO
                                  HARVEY W. GELLER


                                  By:  _____*/s/ Harvey W. Geller*_____
                                            Harvey W. Geller
                                            Attorneys for Plaintiff
                                            FLO & EDDIE, INC.

---

[10] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2012) highlights the need for damages discovery as the Supreme Court held that District Courts should engage in an adequate merits-based analysis of the damages model that the plaintiffs used to justify class certification.