UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

FLO & EDDIE, INC., individually and on behalf
of all others similarly situated,

        Plaintiff,

    -against-                                  No. 13 Civ. 5784 (CM)

SIRIUS XM RADIO INC., and DOES 1 through
10,

        Defendants.

------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/15/15
```

## DECISION AND ORDER

McMahon, J.:

On November 14, 2014, the Court denied Sirius's motion for summary judgment. ("Decision and Order," Docket #88.) In addition to denying Sirius's motion, the Court ordered Sirius to show cause "why summary judgment should not be entered in favor of Flo and Eddie as to liability only." (Decision and Order at 1.)

Sirius moved for reconsideration of the Court's order and for the Court to certify an interlocutory appeal of the Decision and Order. (Docket #92.) Sirius then submitted a response to the order to show cause. (Docket #104.) The Court denied the motion for reconsideration and deferred Sirius's motion to certify an interlocutory appeal until it had resolved the order to show cause. ("Reconsideration Decision," Docket #108 at 1.)

The order to show cause has now been fully briefed. For the reasons stated below, the Court will not at this time enter summary judgment in favor of Flo and Eddie. If Flo and Eddie wishes to proceed individually and not as a class representative, it should so notify the Court, at which point summary judgment as to liability will be entered in its favor. However, if the action is to

1

remain a class action, the parties should proceed with discovery, and Flo and Eddie should move for class certification no later than April 3, 2015.

## DISCUSSION

The reader is presumed to be familiar with the facts of this case and with the Court's previous decisions.

Sirius argues that summary judgment should not be entered in favor of Flo and Eddie as to liability at this time for five reasons.

### I. Ownership Issues

Sirius first argues that Flo and Eddie is not entitled to summary judgment because it has not yet established its ownership of the Turtles recordings. The legally relevant issue is ownership of the common law copyrights in those recordings, not the recordings themselves; however, neither party has claimed that ownership of the Turtles recordings has ever been transferred separately from ownership of the common law copyrights in those recordings also being transferred, and unless the parties otherwise agree, the sale of an artistic work normally conveys the common law copyright in that work. *See Rosenberg v. Zimet*, 30 Misc. 3d 592, 594 (Sup. Ct. 2010).

There is no genuine dispute of material fact on the issue of Flo and Eddie's ownership of the recordings, and undisputed evidence – indeed, evidence admitted by Sirius – establishes Flo and Eddie's ownership of the copyright in those sound recordings.

As described in the Decision and Order, the Turtles' recordings were originally owned by White Whale Records. (Cohen Tr. 45:12-19; Kaylan Tr. 44:5-7; Volman Decl. ¶ 2.) After a legal dispute between the Turtles and White Whale, White Whale transferred "all right, title and interest in and to the original master recordings of The Turtles" to five of the Turtles' members: Mark Volman, Howard Kaylan, Al Nichol, John Seiter, and James Pons. (Volman Decl. ¶ 5; *see also* Cohen Tr. 61:3-14.) Volman and Kaylan (two of those members) then purchased the remaining

2

members' interests. (Kaylan Tr. 49:21-51:10; Volman Tr. 43:10-18; Volman Decl. ¶ 6.) In the Rule 56.1 statement filed by Sirius in support of its motion for summary judgment, Sirius concedes all of the above. (Sirius 56.1 Statement ¶¶ 18-19).

What Sirius does not concede is that Volman and Kaylan transferred their interest to Flo and Eddie, an entity in which they are the principals. Volman submitted a sworn declaration in which he testified that he and Kaylan "transferred all of the rights to The Turtles' master recordings to Flo & Eddie." (Volman Decl. ¶ 7.) Volman repeated that claim in his deposition. (Volman Tr. at 43:19-44:10.) Nonetheless, as far as Sirius is concerned, that ultimate transfer is nothing more than an allegation ("*Plaintiff claims* that Volman and Kaylan transferred ownership of The Turtles' sound recordings to Plaintiff around . . . 1974;" Sirius 56.1 Statement ¶ 20 (emphasis added).)

Unfortunately, for Sirius, this is not sufficient to raise a genuine issue of fact in contravention of Flo and Eddie's evidence that it owns the master recordings. Volman's testimony about the transfer is evidence that it took place and it is the only evidence in the record on the point. Sirius submitted no evidence that contradicts Volman's sworn testimony, and no evidence that calls his credibility into question. Sirius argues that Flo and Eddie has not provided the Court with any documentary evidence of the transfer of rights to it, but documentary evidence is not required. An assignment of common law copyrights need not be in writing to be valid under New York law, *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 643-44 (2d Cir. 2004); a court can infer that a transfer has taken place from subsequent conduct. *Jerry Vogel Music Co. v. Warner Bros.*, 535 F. Supp. 172, 175 (S.D.N.Y. 1982). Here there is a huge amount of evidence that Volmand and Kaylan transferred the common law copyright in the sound recordings to Flo and Eddie. Flo and Eddie has exploited "Turtles' master recordings by licensing the rights to make and sell records and licensing the rights for The

3

Turtles' recordings to be used in movies, TV shows, and commercials. More recently, Flo & Eddie has licensed the Turtles' recordings to The Orchard to be exploited digitally, including through the iTunes and Amazon stores." (Volman Decl. ¶ 7; *see also* Sirius 56.1 Statement ¶ 53 (acknowledging that Flo and Eddie has engaged in all of these activities)). Flo and Eddie have thus engaged for many years in the kind of licensing activity that only an owner of the rights in the sound recordings could legally do. *See Houghton Mifflin Co. v. Stackpole Sons*, 104 F.2d 306, 311 (2d Cir. 1939).

## II. Implied License

Sirius also argues that summary judgment in Flo and Eddie's favor would be inappropriate because Flo and Eddie gave Sirius an implied oral license to use the Turtles' sound recordings in its programming. Sirius infers the existence of a license from the fact that it played the Turtles' recordings for years, with the knowledge of Kaylan and Volman (Flo and Eddie's principals) and without objection from them. Indeed, Sirius claims that Volman and Kaylan actually appeared as guests on several Sirius shows and that Kaylan guest-hosted at least one program ("60s on 6") during which Turtles recordings were broadcast. (Less significantly, Sirius also alleges that Kaylan and Volman have hosted programs on terrestrial radio stations during which Turtles recordings were broadcast.) All that evidence is undisputed by Kaylan and Volman.

A defendant bears the burden of proof to show that a plaintiff impliedly licensed its work for the defendant's use. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995). The burden is not easy to meet. A defendant asserting the existence of an implied license must show that the plaintiff "created a work at [another's] request and handed it over, intending that [the other] copy and distribute it." *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000) (quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990)); *see also Assoc. Press v. Meltwater U.S. Holdings, Inc.* ("*Meltwater*"), 931 F. Supp. 2d

4

537, 562 (S.D.N.Y. 2013); *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009).

Sirius has presented no evidence, either direct or circumstantial, that Flo and Eddie or its principals, Kaylan and Volman, created the Turtles' sound recordings at Sirius' request. Indeed, that would have been impossible, since Sirius did not exist when the recordings were made some 45 or so years ago. Nor has Sirius offered any evidence that Flo and Eddie "handed over" (i.e., gave) those recordings to Sirius – let alone that Flo and Eddie did so with the intent that Sirius (or any radio stations) would copy and distribute them. Thus, Sirius has failed to present any evidence supporting two of the essential elements of its implied license claim. That alone is sufficient to dismiss the defense of implied license.

Furthermore, while Sirius wants this Court to infer, from the failure of Flo and Eddie's principals to object to infringing conduct, that Flo and Eddie acquiesced to Sirius's performance of Turtles recordings, mere acquiescence is insufficient to establish an implied license. *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 121 (S.D.N.Y. 2012). Sirius would still have to produce "evidence of a meeting of the minds between the licensor and licensee such that it is fair to infer that the licensor intended to grant a nonexclusive license." *Meltwater*, 931 F. Supp. 2d at 562. There is no evidence in the record showing a meeting of the minds between Flo and Eddie and Sirius.

Courts have rejected implied license arguments with far stronger facts. In *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409, 417 (S.D.N.Y. 2004), for example, the court held that no implied license existed when the plaintiff and defendant had actually discussed the terms of a licensing agreement for the defendant to use the plaintiff's recordings and the plaintiff had left a physical copy of its recordings with the defendant. Here,

5

with even less evidence of any agreement to the terms of an implied license, the case for a "meeting of the minds" is even weaker.

Thus, no genuine issue of material fact relating to any implied license bars entry of summary judgment in favor of Flo and Eddie.

## III. Waiver and Estoppel

Sirius next argues that Flo and Eddie has waived its claims and is estopped from raising them. These arguments depend on the same evidence as the implied license argument: that Flo and Eddie's principals failed to take action in the face of Sirius's allegedly infringing conduct, that they appeared on various Sirius programs as guests or hosts, and that Turtles recordings were performed as part of those programs.

To establish waiver under New York law, one must show "intentional relinquishment of a *known* right with both knowledge of its existence and an intention to relinquish it." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 482 (2d Cir.) *certified question accepted*, 3 N.Y.3d 666 (2004) *and certified question answered*, 4 N.Y.3d 540 (2005) (quoting *Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179, 187 (App. Div. 1980)) (emphasis added). The conduct constituting a waiver must be "clear, unmistakable and without ambiguity." *Civil Serv. Employees Ass'n, Inc. v. Newman*, 450 N.Y.S.2d 901, 903 (App. Div. 1982) *aff'd*, 61 N.Y.2d 1001 (1984). Above all, waiver, like implied license, "may not be inferred from mere silence or inaction." *Bank of Am., N.A. v. 414 Midland Ave. Associates, LLC*, 911 N.Y.S.2d 157, 161 (App. Div. 2010). In the context of federal copyright law – from which state copyright common law often draws – courts generally reject defenses predicated on a plaintiff's failure to act in the face of prior infringement. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976 (2014); *Capitol Records*, 372 F.3d at 484.

6

Sirius argues that Flo and Eddie failed to pursue infringement actions against both digital and terrestrial radio broadcasters for many years while Turtles' recordings were played over the air. But that is precisely the sort of inaction that does not constitute a waiver under New York law.

The appearances by Kaylan and Volman on Sirius (and possibly other, terrestrial radio stations) shows during which Turtles' recordings were broadcast are affirmative acts, not inaction. But they are hardly "unmistakable" and "[un]ambiguous" evidence of a waiver of their right to invoke the benefits of their common law copyright – especially in view of the very lack of clarity over the scope of common law copyright protection that occasioned this lawsuit and companion lawsuits in other states.

Under New York law, the party asserting a defense of estoppel must show by the party sought to be estopped: "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 594 (2d Cir. 1996) (quoting *Smith v. Smith*, 830 F.2d 11, 12 (2d Cir.1987)); *see also Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179, 187 (App. Div. 1980).

Sirius offers no evidence that Flo and Eddie made any false representation to Sirius or concealed any material fact. Even if one accepted that Flo and Eddie's principals somehow misrepresented material facts to Sirius by appearing on Sirius's programming (and it is unclear what they would have misrepresented by appearing), Sirius does not offer any evidence that they acted with intent to deceive it when making those appearances. Further, Sirius offers no evidence that it relied on anything said or done by Flo and Eddie when it decided to program the Turtles'

7

recordings. Sirius arguably relied on the general industry practice with respect to pre-1972 sound recordings (which was not to pay royalties to the owners of the sound recording, since no *federal* copyright existed) and on the lack of any lawsuits over the years challenging that practice. (Frear Decl. ¶ 15.) But that is not at all the same thing as relying on affirmative conduct by Flo and Eddie.

## IV. Statute of Limitations

Sirius next claims that the statutes of limitations for unfair competition and common law copyright claims bar Flo and Eddie's claims. Again, Sirius misses the mark by a wide margin.

The statute of limitations for unfair competition claims is three years. Decision and Order at 13-14 (citing *Sporn v. MCA Records, Inc.*, 451 N.Y.S.2d 750, 751 (App. Div. 1982) *aff'd*, 58 N.Y.2d 482 (1983)). In the Decision and Order, I stated in passing that the statute of limitations for common law copyright infringement was six years. Decision and Order 14. For that proposition I cited the recent opinion in *Capitol Records, LLC v. Harrison Greenwich, LLC* ("*Harrison Greenwich*"), 44 Misc. 3d 428 (Sup. Ct. N.Y. County 2014), in which the New York Supreme Court held that the residual six-year limitations period contained in CPLR § 213(1) applied to claims of common law copyright infringement because "no limitation is specifically prescribed by law." *Id.* In so holding, the Supreme Court rejected the defendant's claim that copyright infringement was an "injury to property" subject to a three-year statute of limitations under CPLR § 214(4).

Sirius argues that the holding in *Harrison Greenwich* is incorrect. Several of my colleagues on this Court agree with Sirius, and have applied the three-year limitations period for injuries to property to common law copyright infringement claims (though without discussion, and usually with the agreement of the parties). *See, e.g. Urbont v. Sony Music Entm't*, 863 F. Supp. 2d 279, 286 (S.D.N.Y. 2012); *DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 507

8

(S.D.N.Y.) *aff'd*, 11 F. App'x 26 (2d Cir. 2001); *see also Thee v. Parker Bros., Inc.*, No. 75 C. 1554, 1978 WL 950, at *4 (E.D.N.Y. Mar. 9, 1978).

After thinking about the issue, I conclude that three years is the correct limitations period for Flo and Eddie's common law copyright claims. I disagree with the court in Harrison Greenwich; copyright infringement is an "injury to property." Sirius has taken and used Flo and Eddie's copyrights in the Turtles' recordings for its own benefit, thereby reducing the value of those copyrights to Flo and Eddie. Thus, copyright infringement is the type of tort to which CPLR § 214(4)'s three-year statute of limitations applies.

Having established the relevant statute of limitations, I now turn to the issue raised by Sirius: did Flo and Eddie bring a timely claim of infringement? In general, under New York law each new act of infringement gives rise to a new claim. *See Urbont v. Sony Music Entm't*, 863 F. Supp. 2d 279, 287 (S.D.N.Y. 2012). Therefore Flo and Eddie's claim is not time-barred, but it can recover damages for infringement only going three years back – that is, Flo and Eddie can recover damages for acts of infringement committed on or after August 16, 2010.

Sirius does not dispute that the general rule for infringement cases that each new unlawful act gives rise to a new claim. Instead, it argues instead that this case is not really an infringement case at all, but rather a dispute over who owns the Turtles' recordings and their concomitant common law copyrights. Unlike an infringement claim, a copyright "ownership" claim accrues only once – "when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011). Any such ownership claim against Sirius accrued and lapsed long ago.

In the federal statutory context, if a party who believed that she was the rightful owner of a statutory copyright became aware that someone else was claiming to own her copyright, she

9

would have three years to bring an action asserting her ownership – in essence, an action to quiet title to the copyright – pursuant to 17 U.S.C. § 507(b). *See, e.g., Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996).

This distinction becomes trickier when a plaintiff styles a claim as one for infringement but the real dispute is about ownership. That situation confronted the Second Circuit in *Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011). The plaintiff Kwan was hired in 1998 to edit a book authored by the defendant Schlein. *Id.* at 226. Before the book was published Kwan asked to be listed as a co-author, but the book was published with Schlein as the sole credited author, and a copyright in the book was registered by Schlein and the publisher in January, 1999. *Id.* at 227. In September 1999, Kwan received and deposited a royalty check for the first edition of the book, as she had agreed with the publisher, but she received no checks for any later editions (for each of which the copyright was registered by Schlein and the publisher). *Id.* Nor did Kwan communicate at all with the publisher until 2005, at which time she filed a lawsuit alleging that Schlein and the publisher were infringing her copyright in the book. *Id.*

The Second Circuit held that Kwan's claim was barred by the statute of limitations. Although Kwan described her claim as copyright infringement – and an infringement claim would have been timely with respect to the two most recent editions of the book – the Second Circuit explained that the central dispute in the case "involves who wrote [the book] in the first place." *Id.* at 229. Kwan's claim was barred because the statute of limitations for ownership actions "cannot be defeated by portraying an action as one for infringement when *copyright ownership rights* are the true matter at issue." 634 F.3d at 229 (internal citations and quotation marks omitted) (emphasis added).

10

Because Flo and Eddie has styled its claim as one for infringement, Sirius must rely on cases like *Kwan*, which apply the rule for ownership claims when ownership is "the dispositive issue" in a case alleging infringement. *Id.* But this case is not *Kwan*, or any of the other cases cited by Sirius in which ownership of a copyright (or other entitlement) was the principal fact in issue. In copyright ownership cases, the lawsuit is between two parties who claim ownership of the copyrights (often, as was the case in *Kwan*, with one party claiming joint ownership by virtue of collaboration with the party who registered the copyright), and one party's claim of infringement is entirely a function of whether the other party is the sole owner of the disputed copyrights. Here, Flo and Eddie is suing Sirius for infringement, and Sirius does not assert that *it* owns the common law copyright in the Turtles' master recordings. It makes no sense to say that Flo and Eddie's cause of action against Sirius accrued when it became aware of its disputed ownership rights against Sirius, because Sirius does not claim ownership of the copyrights and there is no ownership dispute between Flo and Eddie and Sirius.

Sirius suggests that other people might have claims to ownership in the recordings (such as original Turtles' members who left the band before any of the transfers discussed above occurred). As the Court as has already ruled, Sirius offered not a scintilla of evidence to support any such assertions, and so failed to raise any genuine issue of fact in this regard. The issue of ownership is settled. Furthermore, the fact that Flo and Eddie had to establish its ownership of the common law copyrights in order to bring this suit cannot transform this case from an "infringement" case into an "ownership" case analogous to *Kwan* or *Merchant*. A party alleging copyright infringement always has to prove that he owns the copyright he is asserting, it is an element of his claim!

So just as a plaintiff like Kwan cannot portray an ownership claim as an infringement claim to defeat the statute of limitations, a plaintiff like Sirius cannot achieve the same goal by asserting unsupported defects in ownership. The dispositive issue in this suit has always been whether Flo and Eddie is entitled to license public performances of the pre-1972 sound recordings by virtue of its common law copyrights in those recordings. That being so, each infringement starts the statute of limitations running anew, and Flo and Eddie can recover damages going back three years.

## V.  Class Certification

On the final page of its response to the order to show cause, Sirius raises the issue of class certification. Sirius does not argue that the Court must wait to decide whether to certify a class action before entering summary judgment in favor of Flo and Eddie as to liability. Rather, it argues that if the Court does so then due process precludes it from later certifying a class action.

I do not think the case law extends quite as far as Sirius portrays it. In *Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132 (2d Cir. 2000) (per curiam), the Second Circuit noted that Rule 23(c)(1) requires District Courts to determine whether to certify a class action "[a]t an early practicable time." Deciding the merits of a lawsuit before deciding class certification "contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it." *Id.* at 134 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)).

The Court of Appeals declined to "foreclose the possibility of a post-trial class certification" in an appropriate case. *Id.* at 135. But the Circuit Court also found it "difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits." *Id.* (quoting *Bieneman v. Chicago*, 838 F.2d 962, 964 (7th Cir.1988) (per curiam)).

All this suggests that this Court should defer a ruling on the merits until the issue of class certification is decided.

Flo and Eddie does not really respond to this reasoning. Instead, it restates the obvious point that it should be permitted to conduct class discovery before filing a motion for class certification, which it has yet to do. I agree. Therefore, if Flo and Eddie wishes to move for class certification, I will lift the stay on discovery. Otherwise, Flo and Eddie should notify the Court that it intends to proceed individually. If the action is to remain a class action, the parties should proceed with discovery, and Flo and Eddie should move for class certification no later than April 3, 2015.

Dated: January 15, 2015

_____
U.S.D.J.

BY ECF TO ALL COUNSEL